In re TENNESSEE WHEEL & RUBBER CO., Reorganized Debtor.

TENNESSEE WHEEL & RUBBER CO., Plaintiff,

v.

CAPTRON CORPORATE AIR FLEET, American Express Travel Related Services Co., Inc., Knoll International, Inc., McQuiddy Office Designers, Inc., Quenton D. Frazier, Michigan National Bank and Michigan National Bank of Macomb, Shelly Abramowitz, Ind. & d/b/a Longrange Planning, Paul K. Aikman, Ind. & f/d/b/a Sams, Aikman and Co., Garrett Financial Services, Inc., Jerome Singer, Ind. and as Trustee of the Gary Singer Trust Steven N. Singer, Douglas A. Thal and Bruce Thal, Personal Representative of the Estate of Donald L. Thal, Konfara Company, John J. Patrico, Joseph Perfeli and Nicholas Ritz, each individually and d/b/a Oxbow Properties and/or Oxbow Investments, Michigan Employment Security Commission, Greg Forshee, David J. Forshee, Gary L. Mooneyham, Ind. & d/b/a Gary L. Mooneyham & Assoc., John Behan, Ind. & d/b/a Canine College, Rose Colman, in her capacity as independent personal representative of the Estate of Benjamin W. Colman, Star Chrysler Plymouth, Inc., Third National Bank in Nashville, Raymond C. Boes and Ray Boes & Associates, Inc., John H. Roe, Jr., and Emily Hunt Roe, AFCO Credit Corporation, Pentastar Aviation, Inc., Defendants.

Bankruptcy No. 384–01237.

Adv. Nos. 386–0038, 386–0063, 386–0061, 386–0105, 386–0106, 386–0108, 386–0113, 386–0117 to 386–0120, 386–0123, 386–0125 and 386–0126.

United States Bankruptcy Court, M.D. Tennessee.

Aug. 29, 1986.

Russell H. Hippe, Jr., Trabue, Sturdivant & Dewitt, Nashville, Tenn., for Knoll Intern., Inc. and Rose Coleman, in her personal capacity as independent personal representative of the Estate of Benjamin W. Colman, and as Special Attorneys for all defendants for the Purpose of this Motion.

Randal Mashburn, Beth Roberts Derrick, Jennings, Derrick & Mashburn, Nashville, Tenn., for Tennessee Wheel & Rubber Co.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The issue in these consolidated motions to dismiss is whether the post-confirmation debtor is the proper party to recover preferential transfers and fraudulent conveyances. I hold that the debtor can maintain these actions. The defendants' related assertions of lack of subject matter jurisdiction also fail.

This memorandum constitutes findings of fact and conclusions of law. Bankr.R. 7052. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (F), (H), (L) and (O) (Supp.II 1984).

### I.

The facts are undisputed. On May 4, 1984, Tennessee Wheel and Rubber Company ("debtor") was named as the debtor in both a voluntary and an involuntary Chapter 11 petition. The two cases were consolidated by order dated July 25, 1984.

The debtor owed a substantial debt to First American National Bank ("FANB"), and its assets were heavily encumbered to the bank. After notice to creditors, this court entered financing orders permitting the debtor's use of FANB's cash collateral and approving a postpetition financing arrangement with FANB. *In re Tennessee Wheel & Rubber Co.*, AGREED ORDER FOR USE OF CASH COLLATERAL, Case No. 384–01237 (Bankr.M.D.Tenn. May 18, 1984); *In re Tennessee Wheel & Rubber Co.*, ORDER AUTHORIZING DEBTOR–IN–POSSESSION TO OBTAIN SECURED FINANCING PURSUANT TO BANKRUPTCY CODE § 364(c), Case No. 384–01237 (Bankr.M.D.Tenn. May 18, 1984). These orders cross-collateralized the debtor's prepetition and postpetition debts to FANB, and granted security interests in all pre- and postpetition assets of the debtor.[1] No creditor objected to these financing orders. *See In re Tennessee Wheel & Rubber Co.*, ORDER CONTINUING FINANCING ARRANGEMENT BETWEEN DEBTOR AND FIRST AMERICAN BANK OF NASHVILLE, Case No. 384–01237 (Bankr. M.D.Tenn. Oct. 30, 1984).

On April 12, 1985, the debtor filed its "Second Amended Plan of Reorganization" and "Amended Disclosure Statement." The treatment of creditors is described as follows in the Disclosure Statement:

> The Plan provides for the immediate payment in full in cash of all administrative and priority claims ... and for the payment of prepetition taxes ... as required by § 1129(a)(9)(C). The Plan further provides for the distribution of a total of $100,000 on a pro rata basis to general unsecured creditors without priority and who are not "insiders".... Unsecured creditors who are not entitled to priority and who are "insiders" will receive no distribution. The claim of the only secured creditor, First American, shall be paid over a fifteen-year period.... Cas-Tech, the sole shareholder as of the date of the filing will receive nothing under the Plan and shall retain no interest in Tennessee Wheel.
>
> Funding of the immediate cash requirements of the Plan will be funded by line of credit [not less than $500,000.] extended by First American. The further cash requirements of the Plan will come from recovery of fraudulent conveyances and preferential transfers and operations of the Reorganized Debtor and from future cash infusions in the form of contributions to capital or debt....

Disclosure Statement at 16. The post-confirmation line of credit was to be secured "by a first and prior security interest in all of the assets" of the reorganized debtor. Plan at 8.

The Plan provided that all property of the estate, including recoveries pursuant to the avoiding powers, would vest in the debtor upon confirmation. Stephen C. Ramsey ("Ramsey")[2] was identified by the plan as the post-confirmation representative of the estate. 11 U.S.C. § 1123(b)(3) (1982 ed.). Plan at 9; Disclosure Statement at 17. The Plan called for retention of jurisdiction by the bankruptcy court, *inter alia*, to recover assets pursuant to 11 U.S.C. §§ 547 and 548. Plan at 11.

---

**1.** The cross-collateralization of a Chapter 11 debtor's pre- and post-petition debts to a creditor has been the subject of much controversy. *See Otte v. Manufacturers Hanover Commercial Corp. (In re Texlon Corp.)*, 596 F.2d 1092 (2d Cir.1979); *In re Beker Industries Corp.*, 58 B.R. 725, 742 (Bankr.S.D.N.Y.1986); *In re FCX, Inc.*, 54 B.R. 833, 840 (Bankr.E.D.N.C.1985); *In re Roblin Industries, Inc.*, 52 B.R. 241, 244 (Bankr. W.D.N.Y.1985); *In re Monach Circuit Industries, Inc.*, 41 B.R. 859, 861 (Bankr.E.D.Pa.1984); *In re Antico Manufacturing Co., Inc.*, 31 B.R. 103, 105 (Bankr.E.D.N.Y.1983); Bohm, *The Legal Justification for the Proper Use of Cross-Collateralization Clauses in Chapter 11 Bankruptcy Cases*, 59 AM.BANKR.L.J. 289 (Fall 1985). Cross-collateralization was not challenged in this case, apparently because the debtor's principal prepetition creditor, FANB, was not willing to make postpetition advances on any other basis and no other source of postpetition financing was available. I express no opinion of the general propriety of cross-collateralization in Chapter 11 cases.

**2.** Ramsey acquired all of the debtor's common stock soon after the debtor sought Chapter 11 protection. *See* note 4 *infra*.

The Disclosure Statement revealed the debtor had already recovered $15,200 from preferential transferees and the debtor believed there remained $900,000 in unrecovered preferences and fraudulent conveyances. These additional avoidance actions were in preparation for filing. Disclosure Statement at 7, 15. The Disclosure Statement opined that the debtor's assets were insufficient to entitle the general unsecured claimholders to any distribution in the event of a liquidation. Disclosure Statement at 18 and Exhibit D.[3]

The debtor's Second Amended Plan was overwhelmingly approved by vote of the creditors and confirmed by order dated June 4, 1985. Consistent with the confirmed plan, FANB provided the reorganized debtor a $550,000 line of credit. On July 8, 1985, Tennessee Wheel drew against this line of credit to make payments to unsecured claimholders as required by the confirmed plan.

These adversary proceedings are the avoidance actions described in the disclosure statement and plan and preserved for the debtor by the plan and confirmation order.

## II.

■ The thrust of defendants' motions to dismiss is that the avoidance powers may only be exercised for the benefit of general unsecured claimholders. Defendants assert that unsecured claimholders will receive no benefit from these actions. The defendants also argue that retention of these actions by the reorganized debtor constitutes an impermissible assignment of the estate's avoidance powers.

The assignability of bankruptcy avoidance powers is a difficult and disputed

question. Courts have held such actions to be non-assignable at least since 1909. *See Belding-Hall Mfg. Co. v. Mercer & Ferdon Lumber Co.*, 175 F. 335 (6th Cir.1909). The enactment of 11 U.S.C. § 1123(b)(3) in 1978 arguably disrupts the settled prior case law. *Compare Robison v. First Financial Capital Management Corp. (In re Sweetwater)*, 55 B.R. 724 (Bankr.D.Utah 1985) (finding no congressional intent to change prior case law) *with Duvoisin v. East Tennessee Equity, Ltd. (In re Southern Industrial Banking Corp.)*, 59 B.R. 638 (Bankr. E.D.Tenn.1986) (11 U.S.C. § 1123(b)(3) significantly affects prior law). I need not determine the assignability of avoidance actions under the 1978 Code because I find there has been no assignment in this case.

The Code defines "debtor" as a person concerning which a bankruptcy case has been commenced. 11 U.S.C. § 101(12) (1982 ed.). A "debtor-in-possession" is a debtor in a Chapter 11 case in which a trustee is not serving. 11 U.S.C. § 1101(1) (1982 ed.). Section 1123(b)(3) permits a plan of reorganization to provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose," of any claim or interest belonging to the debtor or to the estate. 11 U.S.C. § 1123(b)(3) (1982 ed.).

The "debtor" and "debtor-in-possession" in this case was a corporation, Tennessee Wheel and Rubber Company. The "reorganized debtor" is the same corporation indistinguishable from the "debtor" for § 1123 purposes.[4] These avoidance actions were vested in the reorganized debtor as contemplated by § 1123 and as overwhelmingly approved by creditors of this estate. There

---

**3.** At the time of confirmation, the liquidation value of the debtor's assets was stated as $2,352,-281. The secured claim of FANB was listed as $2,408,812 and the total secured and priority claims as $2,805,871.03.

**4.** The only event arguably constituting a change in this debtor during this case was the postpetition sale of the debtor's common stock. At the petition, the debtor's issued stock was owned by a related corporation, Cas-Tech, Inc. The stock

had been pledged by Cas-Tech to secure loans at FANB. Cas-Tech defaulted and the bank foreclosed. The stock was purchased from the bank by Stephen Ramsey postpetition and more than a year prior to confirmation. This foreclosure sale has never been attacked in this court. The defendants have not explained how this postpetition, pre-confirmation foreclosure sale of the debtor's common stock affects the applicability or operation of § 1123.

has been no assignment. Tennessee Wheel is no stranger to these proceedings. It became the reorganized debtor after the full process of disclosure, notice, voting and confirmation. It remains subject to this court's oversight and jurisdiction. *See Robison,* 55 B.R. at 730.

█ Section 1123(b)(3) derives from 11 U.S.C. § 616(13) (West 1970) (repealed) of the former Bankruptcy Act. The former Act provision did not permit the retention of avoidance actions by the debtor. As explained by Judge Bare, the change in statutory language indicates Congress intended to enhance the flexibility of debtors, creditors and courts to formulate and confirm a plan of reorganization without diminishing the estate:

> This court notes that § 1123(b) now provides for the retention and enforcement of claims by the *debtor* as well as by a trustee or representative of the estate. (Former § 616(13) merely provided for retention and enforcement by the trustee or an examiner appointed for the purpose.) Also significantly, § 1123(b) has added the word "any," thus providing now for the retention and enforcement of *"any* such claim or interest." (emphasis supplied). Both these changes indicate, if anything, a legislative intention to liberalize, rather than to constrict, the scope of the provision.

*Duvoisin,* 59 B.R. at 642.

Many decisions recognize that a debtor can maintain an avoidance action after confirmation where the unsecured claimholders benefit from the recovery. *See Whiteford Plastics Co., Inc. v. Chase National Bank,* 179 F.2d 582, 584 (2d Cir.1950); *In re Oceana International, Inc.,* 376 F.Supp. 956, 962 (S.D.N.Y.1974); *Texas Consumer Finance Corp. v. First National City Bank,* 365 F.Supp. 427, 431–32 (S.D.N.Y.1973); *Join-In International (U.S.A.) Ltd. v. New York Wholesale Distributors Corp.,* 56 B.R. 555, 561 (Bankr. S.D.N.Y.1986); *Duvoisin,* 59 B.R. at 641; *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch,* 55 B.R. 253, 260 (Bankr.S.D.N.Y.1985)

*aff'd,* 62 B.R. 224 (JMW) (S.D.N.Y.1986); *Centennial Industries, Inc. v. NCR Corp.,* 12 B.R. 99, 102 (Bankr.S.D.N.Y.1981) (Act case); *United Capital Corp. v. Sapolin Paints, Inc.,* 11 B.R. 930, 937 (Bankr.E.D. N.Y.1981).

The "benefit" to unsecured claimholders necessary to support a debtor's post-confirmation recovery powers has taken many forms in the reported decisions. In the leading recent case, Judge Bare found benefit to unsecured claimholders sufficient to support avoidance powers in a post-confirmation successor-in-interest to the debtor as follows:

> As noted, all those general, unsecured creditors whose claims were impaired under the Modified Plan received as part and parcel of their distribution either actual shares of stock or certain rights to purchase shares of stock in the successor-in-interest. Clearly, to the extent that plaintiff's recovery of fraudulent transfers and preferences operates to increase the assets and financial health of the successor-in-interest, it also operates to proportionally increase the value of those ownership rights in the successor-in-interest which constitute a portion of the unsecured creditors' distribution under the plan.

*Duvoisin,* 59 B.R. at 641. In *Centennial Industries,* 12 B.R. at 102, the benefit to creditors was the likelihood that preference recoveries would increase the probability of success of reorganization. This was sufficient benefit notwithstanding that the distribution percentage to unsecured claimholders was fixed by the plan (as is here the case) and would not be increased by preference recoveries. In *J.E. Jennings, Inc. v. William Carter Co.,* 46 B.R. 167 (Bankr.E.D.Pa.1985), the court permitted the debtor to pursue preference actions post-confirmation although the transfers and the debtor's intent to avoid them were not disclosed prior to confirmation and there was no indication that recovery would affect the dividend to unsecured claimholders. The court stated that confir-

mation should not be a windfall for the preferential transferee. *Id.* at 170.

■ Case-by-case analysis is appropriate to determine if the nature and extent of the benefit to unsecured claimholders is sufficient to support the exercise of avoidance powers after confirmation. In this case, the benefit to Tennessee Wheel's creditors is great. Absent the post confirmation line of credit advanced by FANB, unsecured claimholders would have received no distribution. The retention of the power to pursue avoidance actions coupled with the grant of a security interest in the debtor's post-confirmation assets was the consideration for FANB's postpetition and post-confirmation advances to this debtor. No reorganization was possible without new advances from FANB. The possibility of any recovery by the unsecured claimholders was dramatically enhanced by the retention of the avoidance powers. The post-confirmation exercise of these powers is one source of the debtor's repayment of money advanced by FANB to pay the general creditors. This estate has unsecured priority and administrative claimants and unpaid postpetition trade creditors who are dependent for payment upon the success of reorganization. The preference and fraudulent conveyance recoveries are essential to the debtor's ability to pay its creditors pursuant to the confirmed plan.

Denying avoidance powers to the post-confirmation debtor would imbalance the equities of this case. These defendants would escape with their avoidable transfers through the happenstance of the timing of lawsuits within the reorganization case.[5] Major provisions of the confirmed plan would be nullified notwithstanding complete disclosure of the avoidance actions and explicit provision for their continued prosecution. Substantial reliance on the confirmation order—including the post-confirmation advance of large sums of money—would be displaced.

The cases principally relied upon by defendants are distinguishable or inapplicable. In *Whiteford Plastics Co.*, 179 F.2d at 582, the debtor was denied the power to attack a security interest after confirmation under Chapter XI of the former Bankruptcy Act. As Judge Hand noted, the creditors were never informed that a voidable security interest existed, the debtor never offered to contribute the value of the liened property to the plan and the recovery in the avoidance action was not provided for in the plan or payable directly or indirectly to the creditors of the estate. *Whiteford Plastics* is no support for defendants' arguments in this case.

In *Join-In International (U.S.A.) Ltd.*, 56 B.R. at 555, on a motion to dismiss, the bankruptcy court declined to reach the question whether the debtors could continue to prosecute avoidance actions after confirmation because the court found disputed facts. *Join-In International* is not authority for the proposition for which it is cited.

*Galerie Des Monnaies*, 55 B.R. at 253, is even further off point. The court in *Galerie* applied judicial estoppel where a debtor's disclosure statement claimed an absence of preference actions, but such actions existed and were asserted after confirmation.

Finally, *Robison*, 55 B.R. at 724, involved the outright assignment of avoidance actions to the representative of a class of claimants. *Robison* fits in the line of cases limiting the assignability of avoidance actions. Unlike the instant proceeding, the plan in *Robison* did not provide for retention of the avoidance actions by the post-confirmation debtor.

### III.

The defendants make three arguments that the bankruptcy court lacks subject matter jurisdiction.

---

5. Recall that some avoidance actions were completed prior to confirmation and in excess of $15,000 received by the estate. No defendant has suggested that these pre-confirmation recoveries were in error nor has a relevant difference between the pre- and post-confirmation recoveries been articulated.

■ First, defendants claim the debtor lacks standing to prosecute avoidance actions, thus these adversary proceedings are not "civil proceedings arising under title 11, or arising in or related to cases under title 11" within the meaning of 28 U.S.C. § 1334. This argument fails because the post-confirmation debtor has standing and is the proper party to prosecute these actions. *See* Part II, *supra.*

■ Similar to the first argument, defendants assert that these avoidance actions passed out of the estate pursuant to the provisions of the confirmed plan. This ground is baseless because the reorganized debtor is the statutory successor in interest to the pre-confirmation debtor and the plan of reorganization clearly contemplated retention of jurisdiction by the bankruptcy court to complete the prosecution of these avoidance actions.

■ Finally, defendants argue that general unsecured claimholders received their full distribution under the confirmed plan soon after confirmation, therefore administration of this estate is complete and jurisdiction of these adversary proceedings has lapsed. This argument is not supported by the Bankruptcy Code and Rules.

The bankruptcy court has jurisdiction over these avoidance actions pursuant to title 11 and title 28 of the United States Code. These causes of action are created by title 11 and are proceedings arising under title 11. *See* 11 U.S.C. §§ 547, 548; 28 U.S.C. § 1334 (Supp.II 1984); *Robinson,* 55 B.R. at 728–29. *See also* 28 U.S.C. § 157 (Supp. II 1984). Jurisdiction to complete these adversary proceedings was retained by confirmation of the debtor's plan.

Section 350 of the Code requires the closing of a bankruptcy case "[a]fter an estate is fully administered." 11 U.S.C. § 350(a).

Bankruptcy Rules 3022 and 5009 mirror the Code section. A bankruptcy case may be reopened "to administer assets." 11 U.S.C. § 350(b). Section 1142 empowers bankruptcy courts to enter orders implementing plans of reorganization. Bankruptcy Rule 3020(d) provides that "[n]otwithstanding the entry of the order of confirmation, the court may enter all orders necessary to administer the estate."

Prosecution of these causes of action and distribution of the recoveries are elements of administration of this bankruptcy estate. The Code does not require the closing of this case until it is fully administered.

■ The Bankruptcy Code does not contemplate termination of subject matter jurisdiction upon payment of the general unsecured claimholders.[6] Defendants' theory would not permit the administration of bankruptcy estates in the common situation here presented—where the general unsecured claimholders have accepted cash soon after confirmation, but other classes of creditors and interestholders await payment for months or years after confirmation. Defendants' arguments would require Chapter 11 debtors to complete all other aspects of a confirmed plan before making distributions to unsecured claimholders lest the debtor lose bankruptcy court jurisdiction to enforce the confirmed plan. The defendants do not explain why Congress omitted this significant restriction on bankruptcy court jurisdiction in its careful construction of 28 U.S.C. § 1334 or why the restriction is not reflected in the list of permitted plan provisions found in § 1123 or the conditions for confirmation found in § 1129. Chapter 11 provides debtors with great flexibility in the design and execution of plans of reorganization. The profound jurisdictional restriction offered by defendants is too significant to have

---

6. "Substantial consummation" of a plan of reorganization is defined in 11 U.S.C. § 1101(2)(C) and has as one component the "commencement of distribution under the plan." Defendants may be confusing "substantial consummation" with the "full administration" necessary before closing of the bankruptcy case. It is not obvious that a plan has been "fully administered" for purposes of 11 U.S.C. § 350 merely because unsecured claimholders have received the distribution required by the confirmed plan. Defendants have not explained the connection between payments to unsecured claimholders, the "closing" of a bankruptcy case and the loss of subject-matter jurisdiction they assert.

escaped congressional attention; more likely, it is simply not a feature of reorganization law.

The defendants' motions to dismiss will be denied.

An appropriate order will be entered.