**In re AMAREX, INC., Debtor.**

**TEMEX ENERGY, INC., Plaintiff/Appellant,**

**v.**

**HASTIE AND KIRSCHNER, a professional corporation, Defendant/Appellee.**

**Bankruptcy No. BK–82–02335(A).**

**No. CIV–87–382–A.**

United States District Court, W.D. Oklahoma.

Jan. 19, 1989.

Ernest L. Nix, Davidson & Nix, Shreveport, La. and H.D. Binns, Jr., James N. Atkins, Oklahoma City, Okl., for Temex Energy, Inc.

Frank R. Monroe & Elizabeth S. Coddou, Sheinfeld, Maley & Kay, Houston, Tex. and Hastie and Kirschner by Michael Paul Kirschner, Oklahoma City, Okl., for defendant/appellee.

## ORDER

ALLEY, District Judge.

This is an appeal of the bankruptcy court's order of September 26, 1986 dismissing a Complaint to Avoid Preferential Transfer. The appellant, Temex Energy, Inc. argues that the bankruptcy court erred in its interpretation of the subject plan of reorganization and in its application of certain provisions of the Bankruptcy Code. The appellee, Hastie and Kirschner (H–K) has responded, and the issues presented are ready for determination.

### Factual Background

The record indicates that an involuntary Chapter 7 Petition was filed as to the debtor, Amarex, Inc., on December 2, 1982 and that, on the following day, the case was converted to Chapter 11. Several reorganization plans were proposed and, on September 6, 1985, the bankruptcy court entered an order confirming the Third Amended Joint Plan of Reorganization (Third Amended Plan).

Under the Third Amended Plan, the debtor, Amarex, was to be merged with Temex, a wholly owned subsidiary of Templeton Energy, Inc., a Delaware corporation. On November 27, 1985, the bankruptcy court entered several orders in aid of closing in which it recognized the merger of Amarex and Temex. It stated that the entity created by the merger would also be referred to as Temex. Subsequently, on December 5, 1985, the court entered an order on the substantial confirmation of the Third Amended Plan, stating, inter alia, that "(i) Amarex has ceased to exist, and (ii) Temex is vested with the properties and rights of Amarex and survives as a wholly owned subsidiary of Templeton." The order explained that the entity referred to as "Reorganized Amarex" in the Third Amended Plan should now be referred to as Temex.

The Third Amended Plan contains specific provisions regarding the retention and enforcement of claims and the retention of jurisdiction by the bankruptcy court. With regard to the former, Article XX of the Third Amended Plan provides:

All claims for return of Preference Payments or for fraudulent transfers pursuant to Sections 547 and 548 of the Code ... and all other claims owed to or in favor of the Debtor to the extent not specifically compromised and released pursuant to this Plan or an Agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by Reorganized Amarex subsequent to the effective date of this Plan.

As to the retention of jurisdiction by the bankruptcy court, Article XXIII of the Third Amended Plan states:

The bankruptcy court shall retain jurisdiction over these proceedings after Confirmation and until Consummation of the Plan for the following purposes:

1. To hear and determine any dispute arising under this Plan;

2. To adjudicate all claims or controversies arising out of any purchases, sales, or contracts made or undertaken by the Debtor during the pendency of these proceedings;

3. To recover all assets and property of the Debtor, whether title is presently held in the name of the Debtor or a third party;

4. To make such orders as are necessary or appropriate to carry out the provisions of this Plan;

5. To make such orders or give such direction that may be appropriate under Section 1142 of the Code;

6. To adjudicate all claim objections filed by the parties in interest.

On July 31, 1986, Temex filed a Complaint to Avoid Preferential Transfer against the appellee, H–K. Temex sought to recover some $190,101.00 from H–K and contended that this sum had been transferred to H–K within 90 days of the filing of Amarex's bankruptcy petition such that the sum constituted an avoidable preference under the Bankruptcy Code. Subsequently, H–K filed a Motion to Dismiss this Complaint, and on September 26, 1986, the bankruptcy court entered an order granting H–K's motion.

In its order of dismissal, the bankruptcy court first found that in light of Article XXIII of the Third Amended Plan, it did not have jurisdiction to hear Temex's Complaint. The court reasoned that the Plan retained jurisdiction in the bankruptcy court only as to disputes arising under the Plan that were for the purpose of recovering assets of the debtor or adjudicating claim objections. According to the bankruptcy court, Temex's Complaint was outside the scope of this jurisdictional grant because it arose under 11 U.S.C. § 547 rather than under the Plan, because it was to recover assets of the debtor-in-possession rather than the debtor, and because it did not involve an objection to a claim.

The bankruptcy court further found that even if the Plan did confer jurisdiction to hear such a complaint, Temex was not the proper party to bring the action because it was not a representative of the estate pursuant to 11 U.S.C. § 1123(b)(3)(B). The court also noted that any recovery obtained by Temex in the instant adversary proceeding would be of no benefit to Amarex's unsecured creditors.

Finally, the bankruptcy court found that the claims asserted by Amarex had previously been determined in adversary proceeding number 84–561. In that case, a settlement agreement had been entered between the parties, and the court found that the matters raised by Temex in its Complaint were within the scope of that settlement agreement.

On appeal, Temex challenges all these conclusions. Since the issues raised involve questions of law, the Court will engage in de novo review. *See In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399–400 (10th Cir.1986).

### Jurisdiction Conferred By The Plan

Temex first argues that the bankruptcy court erred in concluding that the Plan did not confer jurisdiction to hear the instant preference action against H–K. According to Temex, the court's reading of the Plan is belied by the express terms of Article XX.

■ In interpreting the terms of a chapter 11 plan, the general rules of contractual interpretation are to be applied. *In re Stratford of Texas, Inc.*, 635 F.2d 365, 368

(5th Cir.1981); *Eaton v. Courtaulds of North America, Inc.*, 578 F.2d 87 (5th Cir. 1978). One well established interpretive rule is that, if possible, all of the terms of the contract are to be given effect. *Fortec Constructors v. United States*, 760 F.2d 1288 (Fed.Cir.1985); *HBOP, Ltd. v. Delhi Gas Pipeline Corp.*, 645 P.2d 1042 (Okla. App.1982); *Board of Regents of Oklahoma Colleges v. Walter Nashert & Sons, Inc.*, 456 P.2d 524 (Okla.1969). An interpretation that gives effect to all the provisions of a contract should be favored over one that renders certain provisions inoperative. *Fortec*, 760 F.2d at 1290.

In the instant case, as noted above, Article XX of the Third Amended Plan clearly states that all claims for the return of preference payments are "preserved and retained for enforcement by Reorganized Amarex." Further, it is uncontroverted, that "Reorganized Amarex" is the same entity as the appellant Temex.

■ The bankruptcy court's interpretation of Article XXIII renders this provision of Article XX of no effect, and, for this reason, it is unconvincing. The interpretation is also called into doubt by several courts that have relied on the express terms of plan provisions such as Article XX in concluding that a particular entity was the proper party to bring post-confirmation preference actions. *See, e.g., In re Tennessee Wheel & Rubber Co.*, 64 B.R. 721 (Bankr.M.D.Tenn.1986), *aff'd*, 75 B.R. 1 (M.D.Tenn.1987); *In re Xonics*, 63 B.R. 785 (Bankr.N.D.Ill.1986).

In its reading of Article XXIII, the bankruptcy court was undoubtedly correct in concluding that a distinction exists under the Bankruptcy Code between the terms "debtor" and "debtor-in-possession" and that the right to bring a preference action belongs to a debtor-in-possession, a trustee, or representative of the estate rather than to a debtor. *See Tennessee Wheel*, 64 B.R.

at 724; 11 U.S.C. § 1123(b)(3)(B). Nevertheless, this Court cannot conclude that this distinction is such that Article XXIII of the Third Amended Plan can properly be read to divest the bankruptcy court of jurisdiction to hear Temex's preference action. Article XXIII's statement that the bankruptcy court of jurisdiction "to recover all assets and property of the debtor" must be read in conjunction with Article XX's authorization of post-confirmation preference actions brought by Reorganized Amarex/Temex. In light of Article XX, the fact that the Plan uses the term debtor rather than the term debtor-in-possession in Article XXIII is not significant.

This conclusion is directly supported by *In re J.E. Jennings, Inc.*, 46 B.R. 167 (Bank.E.D.Pa.1985). In *Jennings*, the defendant in a post-confirmation preference action argued that a debtor-in-possession was not the proper party to pursue the action. In finding that the debtor-in-possession was the proper party, the court relied on a provision of the plan of reorganization that stated that the bankruptcy court would retain jurisdiction over all causes of action "between the *Debtors* and any other party including but not limited to any right of the *Debtors* to recover assets pursuant to the provisions of the Code." 46 B.R. at 170. [emphasis added].

Accordingly, the Court finds that neither the Third Amended Plan's failure to use the term "debtor-in-possession" in the jurisdictional section nor any other section of the Plan deprived the bankrutpcy court of jurisdiction to hear preference actions brought by the very party designated to bring them. The bankruptcy court's conclusion to the contrary was erroneous.[1]

### *Appointment Of Temex As A Representative Of The Estate*

Temex next contends that the bankruptcy court erred in concluding that Temex

---

**1.** This Court also disagrees with the bankruptcy court's conclusion that since Article XXIII, Section 1 confers jurisdiction to "hear and determine disputes arising under the Plan," jurisdiction was not conferred over Temex's preference action because that action arises under 11 U.S.C. § 547 rather than under the Plan. Given Article XX's explicit authorization of preference actions

by Reorganized Amarex/Temex, the bankruptcy court's reading of the phrase "under the Plan" is simply too narrow. In any event, in light of the court's conclusion that Article XXIII, Section 3 confers jurisdiction over the instant preference action, it is not necessary that Article XXIII, Section 1 also confer jurisdiction.

was precluded from bringing the subject preference action because it was not a properly appointed representative of the estate. Temex relies upon 11 U.S.C. § 1123(b)(3)(B), which states that a plan may provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." According to Temex, under the Third Amended Plan, it is the "representative of the estate appointed for such purpose," and its preference action is thus authorized by § 1123.

Under § 1123(b)(3)(B), a party who is neither the debtor nor the trustee but who seeks to enforce a claim must establish two elements: (1) that it has been appointed; (2) that it is a representative of the estate. As to the first element, neither § 1123 nor the applicable case law sets forth any particular procedures necessary for an appointment to be valid. In fact, a number of courts have relied upon the express provisions of plans of reorganization that confer the right to bring particular kinds of actions on a particular party in concluding that that party has been appointed for § 1123 purposes. *See, e.g., In re Tennessee Wheel,* 64 B.R. at 723–26; *In re Xonics,* 63 B.R. at 786–88.

As to the second element, most courts have adopted a case-by-case approach to determine whether a particular party seeking to enforce a claim is "a representative of the estate." *See Tennessee Wheel,* 64 B.R. at 725. The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors. *Id.* at 725. The benefit to the unsecured creditors has been defined broadly to include instances in which the purported representative's successful prosecution of the claim would increase the financial assets of the debtor's successor-in-interest and would thus increase the value of the ownership rights in the successor-in-interest held by the unsecured creditors. *See In re Southern Industrial Banking Corp.,* 59 B.R. 638, 641 (Bankr.E.D.Tenn.1986). Benefit to unsecured creditors has also been found in in-

stances in which the purported representative's successful prosecution of the claim would increase the likelihood of a successful reorganization. *See Tennessee Wheel,* 64 B.R. at 726; *In re Centennial Industries, Inc.,* 12 B.R. 99 (Bankr.S.D.N.Y. 1981).

In contrast, in instances in which the purported representative has been found to be a "stranger" to the bankruptcy estate, such that a successful recovery would only benefit the representative and not the estate or its unsecured creditors, courts have concluded that § 1123 does not authorize such a party to prosecute a claim, in spite of a provision in a plan of reorganization that authorizes the representative to do so. *See In re Texas Petroleum Corp.,* 58 B.R. 357 (Bankr.S.D.Tex.1986); *In re Sweetwater,* 55 B.R. 724 (Bankr.D.Utah 1985).

In the instant case, as noted above, Article XX of the Third Amended Plan clearly establishes that Reorganized Amarex/Temex is appointed to prosecute actions such as the one at bar. Thus, Temex has been "appointed" under § 1123(b)(3)(B).

█ With regard to whether Temex is a representative of the estate, the Court finds the bankruptcy court's conclusions unsupported by the record. Most importantly, as the corporation into which the debtor, Amarex, merged, Temex is not a stranger to the Amarex bankruptcy proceedings. Instead, as Judge Lee West has stated in reviewing another adversary proceeding in the Amarex case, Temex is the entity that evolved during the course of the Amarex bankruptcy proceedings. *Amarex, Inc. v. Marathon Oil Company, et al.,* 88 B.R. 362, 363–64 (W.D.Okla.1988).

Moreover, as Temex has noted, as part of the Third Amended Plan, Amarex's unsecured creditors received stock in Temex's parent corporation, Templeton Energy, Inc. Thus, a successful recovery by Temex in the instant preference action, while directly increasing Temex's own assets, would also benefit Temex's parent corporation and, implicitly, those individuals such as Amarex's unsecured creditors who possess ownership rights in Templeton. *Cf. In re Southern*

*Industrial Banking Corp.,* 59 B.R. at 641. Moreover, given Temex's role in the execution of the Plan of Reorganization, an increase in Temex's assets occasioned by a successful recovery in the preference action would increase the probability of a successful reorganization. *Cf. In re Centennial Industries,* 12 B.R. at 102.[2]

In arguing for affirmance of the bankruptcy court's order of dismissal, H–K has relied primarily on *In re Sweetwater, supra.* However, that case is distinguishable from the one at bar in several important respects. Most importantly, *Sweetwater* involved an assignment the right to bring a preference action to a particular class of administrative claimants. The court found that if this assignment were allowed and the assignees prevailed in their preference action, the assignees would benefit at the expense of other creditors. The court also concluded that allowing such assignments would place the court in the "difficult position of scrutinizing each assignment for possible abuse, causing difficult valuation problems as the court tries to determine if the assignment was made for adequate consideration." *Sweetwater,* 55 B.R. at 734–35.

In the instant case, in light of the fact that Temex is the entity into which the original debtor, Amarex, has merged, it is unlikely that the consequences identified by the court in *Sweetwater* will occur if Temex is allowed to pursue its action. Accordingly, the Court concludes that Temex is a representative of the estate under 11 U.S.C. § 1123(b)(3)(B) appointed to bring the instant preference action. The bankruptcy court's conclusion to the contrary was erroneous.

### Settlement In Previous Case

Finally, Temex challenges the bankruptcy court's conclusion that the matters raised in the instant preference action have been resolved by means of a settlement agreement in a previous case. Temex argues that the agreement in question did not extend to the instant action and further notes that the bankruptcy court held no hearing to consider evidence as to its scope.

A review of the record indicates that the subject settlement agreement was entered into on February 18, 1985 between Amarex and several banks: The First National Bank and Trust Company of Oklahoma City, Continental Illinois National Bank and Trust Company of Chicago, and Security Pacific National Bank and Interfirst Bank of Dallas. Section 3.5(i) of that agreement states that the following claims are hereby "compromised and settled:"

> ... claims of the Debtors and their estates against the Revolving Credit Facility Lenders, their officers, directors, employees, agents, and attorneys, jointly and severally, known or unknown, relating to or arising out of the Revolving Credit Facility including but not limited to the Amarex/Banks preference action, the Noteholders' Committee/Banks Preference Action, or claims arising pursuant to §§ 547 or 550 of the Bankruptcy Code, as amended;

In comparison, Temex's Complaint in the instant preference action states only that within 90 days prior to the commencement of the bankruptcy case $190,101.00 was transferred to H–K.

Accordingly, from a review of the settlement agreement in Temex's Complaint, it cannot be determined if the preference payments referred to in the Complaint arose out of "the Revolving Credit Facility," as that term is used in the settlement agreement. As Temex has noted, the bankruptcy court did not hold an evidentiary hearing to determine the scope of the settlement agreement, and it is thus unclear from a review of the October 26, 1986 order how the bankruptcy court determined that the

---

**2.** H–K argues that the unsecured creditors will receive no benefit from any successful recovery in Temex's preference action because they are minority shareholders of Templeton and are thus unable to control the policies or practices of Temex and Templeton. The Court finds this argument unpersuasive, for there are certainly benefits other than majority ownership that will be conferred by Temex's successful recovery. In any event, H–K has cited no authority for the proposition that such majority ownership is the only benefit to the unsecured creditor that should be deemed significant.

matters raised in Temex's Complaint had been settled in the February 18, 1985 agreement. In any event, a motion to dismiss should not be granted unless the court concludes that the plaintiff can prove no set of facts that would entitle it to relief. Bankruptcy Rule 7012(b); *In re Cole Associates, Inc.,* 7 B.R. 154 (Bankr.D.Utah 1980). Here, the Court cannot conclude that Temex could prove no set of facts that would establish that the subject preference payments were outside the scope of the prior settlement agreement.

Accordingly, the Court finds that the bankruptcy court erred in concluding, upon a motion to dismiss and without holding an evidentiary hearing, that Temex's preference action was precluded by the previous settlement agreement.

### Conclusion

In summary, the bankruptcy court erred in three respects: (1) in finding that the Third Amended Plan did not confer jurisdiction to hear Temex's Complaint; (2) in finding that Temex was not a representative of the estate under 11 U.S.C. § 1123(b)(3)(B); and (3) in finding that the matters raised by Temex's Complaint were resolved by the previous settlement agreement. The Court finds that the bankruptcy court has jurisdiction under the Third Amended Plan to hear the instant preference action and that Temex is a properly appointed representative of the estate under 11 U.S.C. § 1123(b)(3)(B).

Further, the Court finds that it cannot be determined from an examination of the settlement agreement and Temex's Complaint to Avoid Preferential Transfer whether the settlement agreement extends to the matters raised in the Complaint. Any determination as to the scope of the previous settlement agreement should be made only after an evidentiary hearing has been held in which both parties will be allowed to present evidence as to the scope of the settlement agreement and its relationship to Temex's Complaint.

Accordingly, the bankruptcy court's order of September 26, 1986 is reversed, and the case is remanded to the bankruptcy court for proceedings consistent with this opinion.

It is so ordered.