884 F.2d 1323
 21 Collier Bankr.Cas.2d 1034, 19 Bankr.Ct.Dec. 1232,
Bankr. L. Rep. P 73,093
 In re SWEETWATER, et al., Debtors.
CITICORP ACCEPTANCE COMPANY, INC., Appellee/Cross-Appellant,
v.
W. LaMonte ROBISON, as trustee for administrative claimants
as assignees of a chose in action from Sweetwater,
etc., Appellant/Cross-Appellee.
 Nos. 85-2933, 86-1013.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 1, 1989.
 
 Alan L. Smith, LeBoeuf, Lamb, Leiby & MacRae, Salt Lake City, Utah (Carol Goodman and Steven J. McCardell of LeBoeuf, Lamb, Leiby & MacRae, were also on the brief), for appellant/cross-appellee Robison.
 Randall J. Sunshine, Shearman & Sterling, New York City (L. Mark Ferre, Clyde & Pratt, Salt Lake City, Utah, George J. Wade and Steven E. Sherman of Shearman and Sterling, New York City, were also on the brief), for appellee/cross-appellant Citicorp Acceptance Co., Inc.
 Before HOLLOWAY, Chief Judge, and BARRETT and BALDOCK, Circuit Judges.
 HOLLOWAY, Chief Judge.
 
 
 1
 The court has before it an appeal and a cross-appeal from an order of the United States District Court for the District of Utah, Robison v. Citicorp Acceptance Co. (In re Sweetwater), 55 B.R. 724 (D.Utah 1985), which are consolidated. The trustee, Robison, appeals a ruling that avoiding powers assigned to him were nonassignable and that he cannot maintain suit to avoid a transfer made to Citicorp Acceptance Company, Inc. (Citicorp). Citicorp cross-appeals a ruling by the district court that the Bankruptcy Court had subject matter jurisdiction to entertain the avoidance action.
 
 
 2
 The basic issues before us thus are: (1) whether the bankruptcy court has subject matter jurisdiction over the avoidance action, and (2) whether plaintiff Robison may pursue the avoidance action pursuant to 11 U.S.C. Sec. 1123(b)(3)(B) as a representative of the estate under the avoidance authority assigned to him. We hold that the bankruptcy court has subject matter jurisdiction and that Robison may pursue the avoidance action as a representative of the estate.
 
 
 3
 * Sweetwater and its affiliates (Sweetwater) filed a petition for reorganization under chapter 11 of the Bankruptcy Code (the Code), 11 U.S.C. Secs. 1101-1174.[1] During the bankruptcy proceeding Sweetwater continued to operate its business as a debtor in possession, incurring debts for "administrative expenses." See Secs. 503, 1107, 1108. Sweetwater could not pay these administrative claims in cash on the effective date of its reorganization plan (the plan) as the Code requires, so the administrative claimants "agreed to a different treatment" of their claims. Sec. 1129(a)(9). This written agreement (the agreement) was included in the plan, which the bankruptcy court confirmed.[2] I R. item 1, exh. A. Instead of cash the administrative claimants accepted an interest, equal to the allowed amount of their claims, in a fund of cash and assets. The fund's assets include "the potential proceeds from litigation or settlement with First Financial and Citicorp." I R. item 1, exh. A, p. 6.[3] The plan provides that "[t]he Bankruptcy Court shall retain jurisdiction to hear and determine that dispute." Citicorp Acceptance Co. v. Ruti-Sweetwater (In re Sweetwater), 57 B.R. 354, 357 (D.Utah 1985). Robison was named trustee of the fund and is responsible for reducing the fund's assets to cash and distributing the cash to the administrative claimants. If the fund's assets produce more cash than the allowed amounts of the administrative claims, the reorganized debtor receives the excess.[4]
 
 
 4
 In accordance with his duties under the plan Robison filed this action against Citicorp. Robison's Sec. 544 (strong-arm) claim sought to avoid Citicorp's unperfected security interest in Sweetwater's rights to future payments under some timeshare installment sales contracts. His Sec. 547 (preference) and Sec. 549 (unauthorized post-petition transfer) claims sought to recover payments Citicorp had received under those installment contracts. Robison's Sec. 553 (set-off) claim requested the amount of a mutual debt that Citicorp had improperly offset against Sweetwater's debts to Citicorp.[5] II R. 12-15.
 
 
 5
 Citicorp filed a motion to dismiss asserting, among other things, that (1) the bankruptcy court lacks subject matter jurisdiction over the action, and (2) the plan provision giving Robison the responsibility of enforcing these avoidance actions is invalid because avoidance powers may not be assigned. The bankruptcy court denied Citicorp's motion.
 
 
 6
 As noted, on appeal the district court held that the bankruptcy court had subject matter jurisdiction, but that Robison could not enforce these avoidance claims because the plan provision giving him that power was an invalid assignment. The district court vacated the order of the bankruptcy court and remanded with instructions to dismiss Robison's complaint.
 
 II
 
 7
 * On cross-appeal, Citicorp argues that the district judge erred when he held that the bankruptcy court and the district court have subject matter jurisdiction over this action. For the reasons stated by the district judge in his thorough and persuasive discussion of the issue, we affirm his ruling on jurisdiction. Robison, 55 B.R. at 728-729.
 
 B
 
 8
 On appeal, Robison argues that the district judge erred when he held that Robison could not enforce these avoidance claims as a representative of the estate. Robison contends that the plan provision empowering him to enforce these claims is authorized by Sec. 1123(b)(3)(B), which provides:
 
 
 9
 [A] plan may provide for the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any [claim or interest of the debtor or the estate].
 
 
 10
 The district judge disagreed, ruling that Robison was not a "representative of the estate" and was not effectively "appointed" to enforce these claims:
 
 
 11
 [A representative of the estate] would not seem to include the debtor in possession's assignee, since the assignee represents his own interests and hence cannot be considered a representative of the estate. Furthermore, it would be contrary to the spirit of chapter 11 to hold that the 'appointment' of the representative could be by a unilateral declaration of the debtor in possession. In all other code sections that speak of appointments, it is the bankruptcy court--not the debtor--who makes the appointment. See e.g., 11 U.S.C.A. Secs. 105(b), 303(g), 701(a), 1102(a), 1104 & 1163. In keeping with the consistent meaning of this term throughout the Code, the court holds that, under section 1123(b)(3)(B), 'a representative of the estate appointed' to prosecute these claims means a representative appointed by the court and not the debtor in possession's assignee.
 
 
 12
 Robison, 55 B.R. at 730. (emphasis in original)
 
 
 13
 Thus, the district judge ruled that Robison could not qualify as a representative of the estate under Sec. 1123(b)(3)(B) because he was the debtor in possession's assignee, representing his own interest, and because he was not effectively appointed. We disagree.
 
 
 14
 We hold that Robison was effectively appointed. We agree that the appointment of a representative of the estate under Sec. 1123(b)(3)(B) must be approved by the court, and may not be accomplished by a unilateral declaration of the debtor in possession. But Robison was not appointed by a unilateral declaration of the debtor in possession. Rather, his responsibilities were first agreed to by the debtor in possession and the administrative creditors. Then this agreement was included in the plan which was voted on and approved by all the creditors and confirmed by the bankruptcy court. This procedure was sufficient to appoint Robison for the purpose of enforcing these claims. Nordberg v. Sanchez (In re Chase & Sanborn Corp.), 813 F.2d 1177, 1180 n. 1 (11th Cir.1987); Temex Energy v. Hastie and Kirschner (In re Amarex, Inc.), 96 B.R. 330, 334 (W.D.Okla.1989); Amarex, Inc. v. Marathon Oil Co. (In re Amarex, Inc.), 88 B.R. 362, 363-364 (W.D.Okla.1988), aff'g 74 B.R. 378 (Bankr.W.D. Okla.1987); Kroh Brothers Dev. Co. v. United Missouri Bank (In re Kroh Brothers Dev. Co.), 100 B.R. 487 (Bankr.W.D. Mo.1989); Perlstein v. Saltzstein (In re AOV Industries), 62 B.R. 968, 970 and n. 1 (Bankr.D.Dist.Col.1986).
 
 
 15
 Further, Robison qualifies as a representative of the estate. We agree with the courts that have adopted a case-by-case approach to determine whether an appointed party's responsibilities and authority under a reorganization plan qualify them as a "representative of the estate." Temex, 96 B.R. at 334; See Tennessee Wheel and Rubber Co. v. Captron Corp. Air Fleet (In re Tennessee Wheel And Rubber Co.), 64 B.R. 721, 725-726 (Bankr.M.D.Tenn 1986). "The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors." Temex, 96 B.R. at 334; Kroh Brothers, 100 B.R. at 499-500; Tennessee Wheel, 64 B.R. at 725-726; DuVoisin v. East Tennessee Equity, Ltd. (In re Southern Industrial Banking Corp.), 59 B.R. 638 at 641-643 (Bankr.E.D.Tenn.1986). Here Robison does not merely represent his own interests; the only interest Robison has in any recovery is his agreed billing rate of $75 per hour. Rather, under the plan Robison is responsible for reducing these claims to cash and paying the administrative claims. In this respect any recovery by Robison will obviously benefit the estate's unsecured administrative creditors. Tennessee Wheel, 64 B.R. at 726.
 
 
 16
 Further, to the extent these avoidance actions have been used to satisfy the administrative claimants, who have priority over other unsecured creditors, the estate has more funds available to pay other unsecured creditors. And if Robison realizes more cash from the fund's assets than the allowed amount of all the administrative claims, the remainder will go to the reorganized debtor who will then be in a better position to meet its financial commitments, if any, under the plan. Thus, any successful recovery by Robison will clearly benefit Sweetwater's unsecured creditors.
 
 
 17
 The plan also satisfies the remaining requirements of Sec. 1123(b)(3)(B). The plan provides for Robison to retain and enforce these avoidance claims. Although Robison's pleadings style him "Trustee for administrative claimants as assignees of a chose in action from Sweetwater," the agreement does not use the word assignment. To the contrary, the agreement provides that "the causes of action against Citicorp and First Financial ... may be retained by the Debtors insofar as necessary to preserve the causes of action." I R. item 1, app. A, p. 8. Thus in effect the avoidance claims were not assigned outright to Robison within the meaning of the term "assign" as it traditionally has been used in the case law involving the nonassignability rule. Rather, Sweetwater has in effect retained the avoidance claims, Robison has been given the responsibility of enforcing them, and the administrative claimants have been given a right to share in any recovery up to the allowed amount of their administrative claims, in accordance with the agreement included in the plan. If Sec. 1123(b)(3)(B) is to function in such a situation, a reorganization plan must empower a representative of the estate to enforce claims of the estate. See Tennessee Wheel, 64 B.R. at 724; Xonics, Inc. v. E & F King & Co. (In re Xonics, Inc.), 63 B.R. 785, 788 (Bankr.N.D.Ill.1986). Sweetwater's plan gives Robison no more power than is necessary to do this.
 
 
 18
 These avoidance claims are also claims of the estate. A claim is defined by Sec. 101(4) as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." This broad definition includes the estate's right to payment under Secs. 547, 549 and 553. We also think Robison's Sec. 544 (strong-arm) claim may be treated as a claim of the estate for purposes of Sec. 1123(b)(3)(B). Accord Kroh Brothers, 100 B.R. at 496-498. In sum, the plan provision naming Robison as a representative of the estate for the purpose of enforcing these avoidance claims is consistent with Sec. 1123(b)(3)(B).
 
 
 19
 Citicorp nevertheless refers to what it calls "an unbroken line of cases" holding that avoidance powers may be exercised only by the trustee or the debtor in possession acting as trustee--that is, that avoiding powers may not be assigned. However, many of these cases were decided before Sec. 1123(b)(3)(B) was enacted and others decided later do not implicate that section.
 
 
 20
 The pre-Sec. 1123(b)(3)(B) cases Citicorp refers to do recite the rule that an avoidance action may be enforced only by the trustee. Belding Hall Mfg. Co. v. Mercer & Ferdon Lumber Co., 175 F.335, 340 (6th Cir.1909); In re Downing, 201 F. 93 (2d Cir.1912); Grass v. Osborn, 39 F.2d 461 (9th Cir.1930); Webster v. Barnes Banking Co., 113 F.2d 1003, 1005 (10th Cir.1940); Mason v. Ashback, 383 F.2d 779, 780 (10th Cir.1967); Texas Consumer Finance Corp. v. First National City Bank, 365 F.Supp. 427 (S.D.N.Y.1973). However, the Bankruptcy Code is a statutory set of rules and Congress can change those rules. And to the extent that Sec. 1123(b)(3)(B) authorizes the bankruptcy court to appoint "a representative of the estate ... for that purpose," it alters the rule recited in these cases that an avoidance claim may be pursued only by the trustee or the debtor in possession. Southern Commodity Corp. Official Liquidating Comm. v. El Campo Rice Milling Co. (in re Southern Commodity Corp.), 78 B.R. 626, 627 (Bankr.S.D.Fla.1987); Perlstein, 62 B.R. at 970.
 
 
 21
 Furthermore, the post-Sec. 1123(b)(3)(B) cases Citicorp cites do not focus on that statute and the plan involved here does not present concerns identified by those cases. For example, in Delgado Oil Co. v. Torres, 785 F.2d 857 (10th Cir.1986), we held that once a bankruptcy petition is filed, preference actions must be pursued in the bankruptcy proceeding, not outside it, and we noted that the power to pursue them is given by the Code to the trustee, as opposed to a single creditor. This procedure ensures that "[t]he overriding nature of the bankruptcy action to recover a preference cannot be circumvented. When a debtor corporation has made a transfer of its assets which results in the preference of one or more creditors over others, the purpose of an action against those transferees is to return assets to the debtor's estate for equitable distribution to all creditors." Id. at 861. Thus in Delgado Oil we were primarily concerned with whether preference actions must be pursued in the bankruptcy proceeding or could be pursued outside it. We held they must be pursued in the bankruptcy proceeding "to satisfy the basic bankruptcy purpose of treating all similarly situated creditors alike." Id. at 862.
 
 
 22
 Similarly, in Texas General Petroleum Corp. v. Evans (In re Texas General Petroleum Corp.), 58 B.R. 357 (Bankr.S.D. Tex.1986), in the course of the bankruptcy proceeding, Marmid had been assigned mineral leases owned by the debtor. Marmid then filed an action to avoid judicial liens on those mineral leases which Marmid claimed were avoidable preferences. The court held that Marmid had no standing to void the preferences because it was neither a debtor, trustee, nor a representative of the creditors committee; instead it was "a creditor of the debtor trying to exercise the avoidance power for itself as a sole creditor, not for the benefit of the debtor's estate or the creditors as a whole.... [T]he avoidance of any liens by Marmid will not benefit the debtor's estate or the general body of creditors of the estate. In the absence of that showing, Marmid is precluded from asserting its claims." Id. at 358.
 
 
 23
 Delgado Oil and Texas General reaffirm the principle that post-petition avoidance actions should be pursued in a manner that will satisfy the basic bankruptcy purpose of treating all similarly situated creditors alike; one or more similarly situated creditors should not be able to pursue an avoidance action for their exclusive benefit. Indeed, this is the principle--equal treatment of similarly situated creditors--upon which pre-Sec. 1123(b)(3)(B) cases that invoked the nonassignability rule were based. The reorganization plan in this case does not offend that principle. The plan treats all administrative creditors alike; they will each receive distributions from the fund in proportion to the allowed amount of their administrative claims.
 
 
 24
 Citicorp further argues that allowing Robison to pursue this action "would undermine the policies of the Bankruptcy Code." Appellee's Brief, p. 10. We disagree.
 
 
 25
 Initially, Citicorp notes the policy discussed above of achieving equality of distribution among similarly situated creditors. "All of the avoiding powers have the policy of fair treatment among creditors at their base. The details of the avoiding powers differ and some can be quite complex at points. The theoretical underpinning of all of them remains the equal treatment among creditors by forcing those who have received an unfair advantage to disgorge the ill gotten gains." R. Aaron, Bankruptcy Law Fundamentals Sec. 10.01 (Clark Boardman Co.). See Delgado Oil, 785 F.2d 861-862; Texas General Petroleum, 58 B.R. at 358. As noted, the plan does not undermine this policy because it treats all administrative creditors alike. In fact, if the transfers from Sweetwater to Citicorp are found to be avoidable, the resulting debt owed by the estate to Citicorp will be classified as an unsecured claim. Citicorp Acceptance, 57 B.R. at 357. To this extent the plan will further the policy of achieving equality of distribution among similarly situated creditors by preventing Citicorp from receiving better treatment than other similarly situated unsecured creditors. See Tennessee Wheel, 64 B.R. at 726; Duvoisin, 59 B.R. at 643. The plan will also increase the funds available to pay all unsecured creditors by satisfying the administrative claimants who have priority over other unsecured claims.
 
 
 26
 Citicorp also refers to the difficult "valuation problems" that will arise if plan provisions like this are allowed. These "valuation problems" might allow finagling creditors to get better treatment than other similarly situated creditors and frustrate the policy of treating similarly situated creditors alike. While it may be true that some plans will create such problems, this one does not. The most each administrative creditor can receive under the plan is the allowed amount of its administrative claims, the most Robison can receive is $75 per hour, and the reorganized debtor will receive any remainder. We can discern no "valuation problems" in this agreement.
 
 
 27
 Citicorp further notes that avoidance actions are "drastic remedies" and carry the "potential for great abuse." Citicorp therefore argues that they should "only be entrusted to a fiduciary of the estate or an officer of the court." As we have noted, however, the Code allows a representative of the estate such as Robison to enforce an avoidance claim. Thus, Congress has decided to allow greater flexibility in the use of avoidance actions than Citicorp thinks wise.
 
 
 28
 Finally, we think this plan provision will further the efficient and fair administration of Sweetwater's chapter 11 bankruptcy proceeding. Bankruptcy estates like Sweetwater's may often lack cash to pay the administrative claimants on the effective date of the reorganization plan. Yet these claimants can prevent the plan from becoming effective unless they agree to a different treatment. Preference claims may be a source of future cash that can eventually pay administrative claims.[6] But for obvious reasons--the debtor may have already created the appearance of favoring certain creditors over others by making the preferential transfer--the administrative claimants and the other creditors may not trust the debtor in possession to enforce preference claims.[7] Conversely, conflicts may exist among the creditors due to their different priorities, or between the debtor in possession and the creditors, that would prevent a creditor's committee from efficiently prosecuting preference claims.[8] A reasonable solution to this problem is provided by Sec. 1123(b)(3)(B) which allows all the interested parties, with the approval of the court, to select a mutually agreeable representative of the estate to enforce these preference claims in the best interests of the debtor, the administrative claimants, and the other creditors.
 
 III
 
 29
 The ruling of the district court that the bankruptcy court has subject matter jurisdiction is AFFIRMED; the ruling ordering Robison's complaint dismissed is REVERSED; and the case is REMANDED to the district court for proceedings consistent with this opinion.
 
 
 
 [1]
 All statutory references are to title 11 of the United States Code, the Bankruptcy Code
 
 
 [2]
 In Citicorp's appeal to the district court, the bankruptcy court's order confirming the plan was affirmed. Citicorp Acceptance Co. v. Ruti-Sweetwater (In re Sweetwater), 57 B.R. 354 (D.Utah 1985). Citicorp's resulting appeal to this court was dismissed as moot. Citicorp Acceptance Co. v. Ruti-Sweetwater (In re Sweetwater), No. 85-1549, slip op. (10th Cir. Jan. 4, 1988). For a more detailed discussion of the confirmation process of Sweetwater's reorganization plan, see Heins v. Ruti-Sweetwater (In re Sweetwater), 836 F.2d 1263 (10th Cir.1988)
 
 
 [3]
 We are advised that First Financial and Robison settled their dispute after Robison filed his opening brief. Opening Brief of Citicorp at 3, n. 2
 
 
 [4]
 The wording of the agreement in relevant part is as follows:
 
 
 [1]
 Debtors in possession ... are unable to pay administrative claims in full on the effective date of reorganization. Pursuant to 11 U.S.C. Sec. 1129(a)(9), holders of allowed administrative claims must be paid in full on the effective date of the plan of reorganization or such parties must agree to a "different treatment" of such claims. The different treatment proposed by the Debtors involves paying certain claims in full and leaving all remaining claims to be paid on a prorata basis from a pool of cash and assets to be established by the debtor
 
 
 [2]
 Administrative claims ... which would participate in the pool, are as follows:
 [The agreement then lists 34 administrative claimants with claims totaling $1,807,241.]
 
 
 [4]
 The Debtors will create a pool of cash and assets from which the remainder [claims totaling $317,286 are to be paid on the effective date] of the administrative claims listed above will be paid. This pool will be comprised from the following sources in the following (in certain instances estimated) amounts:
 [The agreement then lists 8 sources totaling $944,000.]
 
 
 [5]
 In addition to the cash and assets listed above, the pool shall include the potential proceeds from litigation or settlement with First Financial and Citicorp
 
 
 [9]
 W. LaMont Robison will be appointed as trustee (the Trustee) for the administrative claimants.... The Trustee's duties and responsibilities shall consist of the following:
 a. Title to the cash and assets listed above are hereby vested in the Trustee; provided, however, that the causes of action against Citicorp and First Financial outlined in paragraph 5 may be retained by the Debtors insofar as necessary to preserve the causes of action. Notwithstanding the Debtor's retention of these causes of action, the litigation will be pursued and proceeds of litigation will be distributed in accord with this document.
 c. In the event the prorata payments from the pool after deduction of fees and costs result in full payment of all claims listed in paragraph 2 above ... any balance thereafter shall be remitted to the reorganized debtor. Upon final distribution of cash and assets, the Trustee will file a closing report with the Court.
 I item 1, exh. A.
 
 
 [5]
 The parties and the district court have not distinguished the causes of action, and we will also treat them generically as claims based on the debtor in possession's avoiding powers. See Robison, 55 B.R. at 729
 
 
 [6]
 "One method of closing the chapter 11 case and financing the reorganization plan is to distribute a share in the recovery from exercise of the avoiding powers." R. Aaron, Bankruptcy Law Fundamentals Sec. 10.01 (Clark Boardman Co.)
 
 
 [7]
 "The debtor in possession in chapter 11 may raise the avoiding powers.... The debtor in possession is now wearing the hat of the trustee and acting in a fiduciary capacity on behalf of the unsecured creditors.... Practical men and women will recognize a serious gap between theory and practice here. The purpose of chapter 11 reorganization is the salvage and rehabilitation of the financially distressed business. The management may be unwilling to set aside an avoidable transfer with a supplier or lender with whom it intends to do future business after the business is successfully reorganized. Friendships develop in business which may make the debtor in possession hesitant to sue. Therefore, a major problem in chapter 11 cases is assuring that the debtor in possession performs the duties with the same faithful concern for the interests of creditors as would be expected of an independent trustee." Bankruptcy Law Fundamentals at Sec. 10.01
 
 
 [8]
 The bankruptcy court may authorize a creditor's committee to enforce an avoidance claim if the trustee or debtor in possession has failed to adequately protect the interests of the creditors. See In re Philidelphia Light Supply Co., 39 B.R. 51 (Bankr.E.D.Penn 1984) (and cases cited therein)