In re **DAHLGREN INTERNATIONAL, INC.,**

**BALDWIN TECHNOLOGY CORPORATION,**
Plaintiff,

v.

**DAHLGREN INTERNATIONAL, INC., Defendant.**

**Civ. A. No. 3–89–501–H.**

United States District Court, N.D. Texas, Dallas Division.

Aug. 7, 1992.

Nunc Pro Tunc, June 22, 1992.

**396**

William B. Steele, III and Susan L. Karamanian, Locke Purnell Rain Harrell, Dallas, Tex., Warren H. Roter and Vincent A. Castiglione, Morgan & Finnegan, New York City, for plaintiff.

Donald C. Templin, Haynes & Boone, Bill C. Hunter, Hunter Van Amburgh & Wolf, Dallas, Tex., Daniel W. Sixbey, Steven P. Weihrouch and Stuart J. Friedman, Sixbey Friedman Leedom & Ferguson, McLean, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are Dahlgren International, Inc.'s ("DII" or "Dahlgren") Motion to Enter Judgment Disallowing the Administrative Expense Claim of Baldwin Technology Corporation Against Dahlgren and Granting Related Relief, filed May 18, 1992 ("Motion to Enter Judgment"); Dahlgren's supporting Brief, filed May 27, 1992; Baldwin Technology Corporation's ("Baldwin") Brief in Response, filed June 3, 1992; Dahlgren's Reply, filed June 9, 1992; and Baldwin's Surreply, filed June 15, 1992.[1]

Also before the Court is Dahlgren's Motion to Strike Affidavit of Wayna M. Marshall, filed June 9, 1992, and Baldwin's response thereto, filed June 12, 1992, as well as Baldwin's Motion Pursuant to Fed. R.Civ.P. 6(b), filed May 15, 1992.[2] DII's response to the latter motion is contained in its May 27 brief.

### I. Background

This is a patent case. Its bankruptcy roots, however, generate the current controversy. Those roots bear recounting here.

Dahlgren, a one-time manufacturer of printing machinery, filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on December 29, 1986. Dahlgren maintained possession of its assets and continued to operate its business pursuant to sections 1107 and 1108 of the Code. On October 27, 1988, Baldwin, also active in the printing industry, filed suit against Dahlgren under the patent laws of the United States, particularly Title 35, United States Code, sections 271 and 281, claiming that Dahlgren's post-petition activities infringed Baldwin's patent on a printing "dampening system." The suit, numbered CA3–88–2664–C, was assigned to the Honorable Sam R. Cummings.

In the bankruptcy proceedings, Baldwin sought to claim relief requested in CA3–88–2664–C as an administrative expense pursuant to section 503(b)(1)(A) of the Bankruptcy Code (11 U.S.C.A. § 503[b][1][A] [West Supp.1992]). *See* Baldwin's Request for Payment of Administrative Expense, filed February 9, 1989, *In re Dahlgren International, Inc.*, No. 386–35215–A–11 (Bankr.N.D.Tex.). Baldwin moved for mandatory withdrawal of reference on this request on February 22, 1989, and the motion was assigned to this Court. On March 17, 1989, Judge Cummings administratively closed CA3–88–2664–C.

Baldwin's Administrative Expense Claim was addressed in Dahlgren's Second Amended Plan of Reorganization ("the Plan"), which was confirmed by the Bankruptcy Court on May 12, 1989. *See* Order Confirming Plan Pursuant to 11 U.S.C. Section 1129, filed May 12, 1989, *In re Dahlgren International, Inc.* This Court then granted Baldwin's pending motion and withdrew reference on Baldwin's Administrative Expense Claim. *See* Order, filed May 31, 1989 (concluding that withdrawal was mandatory pursuant to 28 U.S.C. § 157[d]).

---

**1.** The Court also considers the applicable arguments presented in Dahlgren's Motion for Leave to File Motion to Enter Judgment, filed May 14, 1992, and Baldwin's Opposition thereto, filed May 15, 1992. *See infra* note 2.

**2.** This motion was filed as part of Baldwin's Opposition to Dahlgren's Motion for Leave to File Motion to Enter Judgment. *See supra* note 1.

After continuances initiated by both parties and the Court, trial was ultimately set for May 18, 1992.[3] Four days before trial, Dahlgren requested leave to file the extant motion. The Court held a conference the morning of trial, at which it granted Dahlgren's request, postponed the trial, and ordered additional briefing.

By Agreed Order, filed June 15, 1992, the Court reopened CA3-88-2664-C, transferred it to this docket, and consolidated it into this action.[4]

In its motion, Dahlgren contends that Paragraph 6.01.2 of the Plan precludes Baldwin's recovery on the Administrative Expense Claim and any further claims for post-petition money damages based on patent infringement disputes between the parties unless judgment was obtained and certified to the bankruptcy court by May 12, 1992. With the passing of that date, Dahlgren now asks the Court to bar Baldwin's claims in this suit.

## II. Analysis

How the Court applies Plan Paragraph 6.01.2 to the claims before it is the first issue at hand.

### Jurisdiction

Both parties view the jurisdictional issues before the Court as a murky morass. They propose divergent pathways to settled ground. Dahlgren avers that the order confirming the Plan is *res judicata* with respect to Baldwin's Administrative Expense Claim and, therefore, completely bars the relief sought in this suit. Baldwin

argues that the Court should withdraw reference on the Plan.

The pertinent *res judicata* inquiry is well established in the Fifth Circuit:

> This circuit's test for res judicata requires that: (1) The parties be identical in both suits, (2) A court of competent jurisdiction rendered the prior judgment, (3) There was a final judgment on the merits in the previous decision, and (4) The Plaintiff raises the same cause of action or claim in both suits.

*Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1143-44 (5th Cir.1990) (footnote omitted). As the background of this case attests, only the third prong of the test is now at issue.

█ A confirmed plan of reorganization has the effect of a judgment rendered by the district court. *In re Doty*, 129 B.R. 571, 583 (Bankr.N.D.Ind.1991); *In re French Gardens, Ltd.*, 58 B.R. 959, 962 (Bankr.S.D.Tex.1986) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 166-67, 59 S.Ct. 134, 135, 83 L.Ed. 104 *reh'g. denied*, 305 U.S. 675, 59 S.Ct. 250, 83 L.Ed. 437 [1938]). Whether it has the effect of a final judgment on a particular claim, however, depends on whether and how the claim was resolved in the plan. *See Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 870 n. 10 (5th Cir.1984) (quoting 1B J. Moore, Moore's Federal Practice ¶ 0.409[1.-1] at 301 [2d ed. 1983], in determining that a claim must be "finally disposed of"); *In re Consolidated Cos.*, 113 B.R. 269, 273-74 (Bankr.N.D.Tex.1989).

---

**3.** This case originally was set for trial the week of June 18, 1990; Baldwin moved for a continuance, to which Dahlgren agreed, on May 23, 1990; on May 29, 1990, the Court granted the motion and reset the trial date for the weeks of January 22 and 28, 1991; the Court vacated the January 22-28 trial setting on January 23, 1991; on April 10, 1991, the Court advised the parties that, due to its criminal docket, the case likely would not be reached before January 1, 1992; on January 3, 1992, the Court reset trial for the weeks of February 18 and 24, 1992; again due to its criminal docket, on February 18, 1992, the Court reset the trial for April 20 and 27, 1992; and, by Order, filed April 20, 1992, the Court moved the trial to the May 18 setting.

**4.** The parties have proceeded as if CA3-88-2664-C and this case were identical. Indeed, the Joint Pre-Trial Order in this case presents claims, counterclaims and defenses identical to those on file in CA3-88-2664-C. *See* Joint Pre-Trial Order, filed April 20, 1992, at 1-4. The Plan even stated that the parties agreed that reference on Baldwin's administrative expense claim would be withdrawn and the claim consolidated into CA3-88-2664-C when it was before Judge Cummings. *See* Plan at ¶ 6.01.2(c); *infra* pp. 400-01. Such an agreement, however, is meaningless without district court action, and Judge Cummings never withdrew reference on Baldwin's claim. Indeed, CA3-88-2664-C was administratively closed when the Plan was confirmed. *See supra* p. 397.

■ In this case, the Plan explicitly defers the bankruptcy court's decision on Baldwin's Administrative Expense Claim pending district court action. Indeed, the Plan provides that the bankruptcy court will await a new "request for classification and allowance of the claim." Plan at ¶ 6.01.2(c)(1). It adds that Dahlgren reserves the right to later assert defenses to any such request made by Baldwin. *See id.* The Plan sets parameters, but plainly does not dispose of Baldwin's Administrative Expense Claim. *See Southmark Properties v. Charles House Corp.*, 742 F.2d at 870 n. 10; *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir.1987) (applying *Southmark*).

■ The three year provision also can be analogized to a statute of limitations. This, however, does not render it a final judgment on the merits. The running of a statute of limitations constitutes a final judgment for *res judicata* purposes only when the claims involved are dismissed. *See Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*, 870 F.2d 1044, 1046 (5th Cir.), *reh'g denied*, 880 F.2d 818 (1989); *Nilsen v. City of Moss Point*, 701 F.2d 556, 562 (5th Cir.1983) (*en banc*) (citations omitted); *see also Mathis v. Laird*, 457 F.2d 926, 927 (5th Cir.) (highlighting that a "ruling" based on the limitations period is required), *cert. denied*, 409 U.S. 871, 93 S.Ct. 201, 34 L.Ed.2d 122 (1972). In this case, as already noted, while the Plan establishes the three year period and the relief to follow should the period run, it does not dismiss the Administrative Expense Claim.

Ergo, the Plan renders no final judgment on Baldwin's Administrative Expense Claim and is not *res judicata* with respect to it.[5]

■ Already, the Court has the claims of CA3–88–2664–C before it and has withdrawn reference on the Administrative Expense Claim. It need not withdraw reference on the remaining portions of Paragraph 6.01.2, as Baldwin suggests.[6] Instead, the Court establishes its jurisdictional footing on other grounds.

What Dahlgren's motion asks the Court to do is enforce a separate agreement between the parties regarding the claims before the Court, the agreement being Paragraph 6.01.2 of the Plan. Thus, Dahlgren invokes basic contract theory and needs nothing more to interject its motion into this case.

■ An agreed provision in a plan of reorganization functions as a binding contract between parties. *See Official Creditors Comm. of Stratford of Tex., Inc. v. Stratford of Tex., Inc. (In re Stratford of Tex., Inc.)*, 635 F.2d 365, 368 (5th Cir.1981); *Temex Energy, Inc. v. Haste & Kirschner (In re Amarex, Inc.)*, 96 B.R. 330, 332 (Bankr.W.D.Okla.1989) (citing *In re Stratford of Tex., Inc.*). To be sure, "(a) Chapter 11 Plan, whether it is one contemplating reorganization or the liquidation of assets, is nothing more nor less than a contract between a debtor and the creditors of the bankruptcy estate." *Retail Marketing Co. v. Northwest Nat'l Bank (In re Mako, Inc.)*, 120 B.R. 203, 207 (Bankr.E.D.Okla. 1990), *on subsequent remand on other grounds*, 127 B.R. 474, 476 (1991). That the Plan was later confirmed by court or-

---

5. In the same vein, it does not address the merits of, nor dispose of, the patent infringement claims at issue in this consolidated suit and is not *res judicata* with respect to those claims. *See infra* pp. 403–05.

6. Baldwin is mistaken when it suggests that the Court has withdrawn reference on the merits of the patent infringement claims underlying the Baldwin Administrative Expense Claim, but that the bankruptcy court still wields jurisdiction to allow or disallow the Administrative Expense Claim and will invoke that jurisdiction after this Court rules on the merits. *See* Baldwin's Brief in Response at 6–8; Baldwin's Surreply at 2–3.

While the bankruptcy court initially retained jurisdiction over the Administrative Expense Claim, first, because Judge Cummings never withdrew reference on the Claim as the Plan contemplated, and second, because the Plan reserves allowance/disallowance jurisdiction for the bankruptcy court, this Court superseded that jurisdiction when it withdrew reference on the entire Administrative Expense Claim after the Plan was confirmed and may allow or disallow the Claim without further jurisdictional maneuvering. *See also* 28 U.S.C.A. § 1334 (West Supp. 1992) (outlining the district courts' original jurisdiction over all Chapter 11 bankruptcy matters).

der changes not the validity of the contract. *See In re Stratford of Tex., Inc.,* 635 F.2d at 368; *see also United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236–37, 95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975) (holding that consent decrees and orders should be construed as contracts). Consequently, for purposes of this ruling, the Court may consider Paragraph 6.01.2 simply as a contract pertaining to the patent infringement claims in this case.

All issues and claims germane to Dahlgren's Motion to Enter Judgment are now before the Court. Before reaching the merits of the motion, the Court addresses Dahlgren's Motion to Strike (the) Marshall Affidavit.

*The Marshall Affidavit*

■ The affidavit of Wayna M. Marshall, filed June 3, 1992 ("Marshall Affidavit"), offers parol evidence on the Plan. Dahlgren contends that the submission of parol evidence violates the Court's orders regarding briefing on Dahlgren's Motion to Enter Judgment and moves to strike the Marshall Affidavit as a result.

In the May 18 conference, the Court stated that it would not accept parol evidence regarding the Plan in the parties' briefing. The Court added that, if it found the Plan to be ambiguous, it would call for an evidentiary hearing. *See* Transcript of Proceedings, May 18, 1992, at 36–37.

Therefore, the Marshall Affidavit is premature.

Still, Baldwin attempts to rehabilitate the affidavit by asserting that much of it merely documents the circumstances that existed at the time that the Plan was formed, citing *Local 787, Int'l Union of Elec., Radio & Mach. Workers v. Collins Radio Co.,* 317 F.2d 214, 220 (5th Cir.1963), in support.

While noting that, in interpreting the Plan, the Court places itself, to the extent possible, in the position or circumstances of the parties at the time of formation, *see*

*Mapco, Inc. v. Pioneer Corp.,* 615 F.2d 297, 302 (5th Cir.1980) (citing *Travelers Indem. Co. v. Holman,* 330 F.2d 142, 149 [1964]), the Court is of the opinion that the Marshall Affidavit adds nothing to its understanding of those circumstances. Indeed, the affidavit's most relevant recounting of circumstances merely quotes Baldwin's Request for Payment of Administrative Expense. Striking the affidavit will not hinder "the essential act of the Court putting itself in the position of the parties at the time the contract was made." *Local 787, Int'l Union of Elec., Radio & Mach. Workers v. Collins Radio Co.,* 317 F.2d at 220.[7]

Dahlgren's motion to strike is GRANTED, and the Affidavit of Wayna M. Marshall is STRICKEN.

The Court next turns to the substance of the Motion to Enter Judgment.

*Plan Interpretation*

The Court's evaluation of Dahlgren's motion necessarily begins with the language of the Plan. Of course, "(i)n interpreting the terms of (the) plan, the general rules of contractual interpretation are to be applied." *In re Amarex, Inc.,* 96 B.R. at 333 (citing *In re Stratford of Tex., Inc.,* 635 F.2d at 368); *see also United States v. ITT Continental Baking Co.,* 420 U.S. at 236–37, 95 S.Ct. at 934 (requiring, as noted earlier, contractual construction of consent decrees and orders). If at all possible, the Court is "required to analyze a contract's meaning by its language without resort to extrinsic considerations. This is because the language of an agreement, unless ambiguous, represents the parties' intention." *Eaton v. Courtaulds of N. Am.,* 578 F.2d 87, 90 (5th Cir.1978) (citation omitted).

■ The Court concludes that the pertinent language of the Plan is unambiguous.[8] "If the written instrument is worded so that it can be given certain meaning or interpretation, then it is not ambiguous,

---

7. The Marshall Affidavit hardly sets forth the "exact setting" in which the Plan was formed in the sense contemplated by the Fifth Circuit in *Local 787. See* 317 F.2d at 220.

8. This ruling constitutes a second ground for rejecting the Marshall Affidavit. *See supra* p. 399.

and the court will construe the contract as a matter of law." *Litton v. Hanley*, 823 S.W.2d 428, 430 (Tex.App.—Houston [1st Dist.] 1992, n.w.h.) (citations omitted); *see Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The Court proceeds with its interpretation accordingly.

Paragraph 6.01.2 reads as follows:

*The Disputed Baldwin Claim.* The request for Payment of Administrative Expense filed by Baldwin in this case on February 9, 1989 (the "Baldwin Administrative Expense Claim") is vigorously disputed and contested by DII. Pending resolution of the disputes giving rise to the Baldwin Administrative Expense Claim (the "DII/Baldwin Patent Infringement Disputes"), DII and Baldwin have entered into an Agreement with respect to the treatment thereof, evidenced by the Agreed Order Pertaining to the Baldwin Administrative Expense Claim providing as follows:

(a) The Baldwin Administrative Expense Claim, though unliquidated as of Confirmation, shall not be discharged as a result of Confirmation but is subject to liquidation, classification and allowance following Confirmation as set forth in the Plan and such Agreed Order;

(b) For the purpose of balloting upon or participating under the Plan, the amount of the Baldwin Administrative Expense Claim is presently fixed at zero dollars ($0.0), subject to increase only as set forth below;

(c) DII and Baldwin have jointly agreed to the withdrawal of reference of the Baldwin Administrative Expense Claim to the United States District Court for the Northern District of Texas, Dallas Division, for consolidation into and resolution in Civil Action No. CA3–88–02664–C, styled *Baldwin Technology Corporation vs. Dahlgren International, Inc., Debtor* (the "DII/Baldwin Patent Infringement Suit") where the claims of Baldwin and the counterclaims of DII regarding the DII/Baldwin Patent Infringement Disputes will be resolved, subject to the following:

(1) If Baldwin recovers a Final Judgment against DII in the DII/Baldwin Patent Infringement Suit (being a judgment which is no longer appealable or if on appeal, has not been superseded by DII) for post-petition money damages, such Final Judgment shall be certified to the Bankruptcy Court with a request for classification and allowance, whether as to the classification, priority or allowance (except as to the amount of post-petition damages liquidated in the DII/Baldwin Patent Infringement Suit) thereof or offsets thereto are reserved by DII and may be asserted in opposition to any such request of Baldwin

(2) Upon classification and allowance thereof as an Administrative Expense Claim, such claim shall be satisfied solely from:

(i) the Baldwin Administrative Expense Escrow (defined below); and

(ii) an undivided fifty percent (50%) of the DII Net Revenue Stream accruing from and after entry of the order of the Bankruptcy Court classifying and allowing such claim. The order of the Bankruptcy Court shall direct the Disbursing Agent to pay the Baldwin Administrative expense Escrow to Baldwin and thereafter make the requisite payments to Baldwin from the DII Net Revenue Stream.

*(3) In the event Baldwin does not (i) recover a Final Judgment against DII for post-petition money damages in the DII/Baldwin Patent Infringement Suit and (ii) certify the same to the Bankruptcy Court for classification and allowance on or before the expiration of three (3) years from Confirmation, the Baldwin Administrative Expense Claim shall be totally disallowed and Baldwin shall no longer seek or assert any claim for post-petition money damages based upon the DII/Baldwin Patent Infringement Disputes against DII. Under such circumstances, the Baldwin Administrative Expense Escrow*

*shall be paid over to DII by the Disbursing Agent.*

(4) The Disbursing Agent shall establish an Escrow fund in the amount of $20,000 (the "Baldwin Administrative Expense Escrow"), the same to be accrued in twenty-nine (29) equal monthly installments of $666.66 and a final monthly installment of $666.86. Each monthly installment shall be withheld by the Disbursing Agent from the DII Net Revenue Stream commencing on the first (1st) day of the Eighth (8th) month following Confirmation.

Restated Second Amended Plan of Reorganization, As Modified, filed May 11, 1989, at ¶ 6.01.2(c)(3) (emphasis in Subparagraph [c][3] added).

While the language of the entire paragraph, on its face, is straightforward, the key provision is Subparagraph (c)(3). The parties agree that the three year period specified therein expired on May 12, 1992, and that no final judgment was certified to the bankruptcy court by that date. *See* Dahlgren's Motion to Enter Judgment, at ¶¶ 1.3, 2.5; Baldwin's Brief in Response at 11–17 (arguing that the three year period applies, but only to pre-confirmation damages).[9]

The question, of course, is how that expiration affects the claims before the Court. In contrast to Dahlgren's insistence on a bar of all Baldwin claims, Baldwin argues that, at most, the expiration precludes only the infringement damages that arose prior to confirmation of the Plan.

■ To resolve the matter, the Court need go no further than the language of Subparagraph (c)(3). On the expiration of the three year period with no certification to the bankruptcy court of final judgment "for post-petition money damages in the DII/Baldwin Patent Infringement Suit," Subparagraph (c)(3) declares threefold relief: First, "the Baldwin Administrative Expense Claim shall be totally disallowed"; second, "Baldwin shall no longer seek or assert any claim for post-petition money

damages based upon the DII/Baldwin Patent Infringement Disputes against DII"; and third, "the Baldwin Administrative Expense Escrow shall be paid over to DII by the Disbursing Agent." This language is sufficiently, even uncompromisingly, specific. *See Willowood Condominium Ass'n, Inc. v. HNC Realty Co.,* 531 F.2d 1249, 1251 (5th Cir.1976); *In re Mako, Inc.,* 120 B.R. at 208.

The Plan defines the "Baldwin Administrative Expense Claim" as "(t)he Request for Payment of Administrative Expense filed by Baldwin in (the bankruptcy case) on February 9, 1989." Plan at ¶ 6.01.2. Similarly, the "DII/Baldwin Patent Infringement Suit" is the original suit, CA3–88–2664–C, *see id.* at ¶ 6.01.2(c), which is now one-and-the-same with this suit. *See* Agreed Order, filed June 15, 1992; *supra* p. 397. Lastly, the "DII/Baldwin Patent Infringement Disputes" are "the disputes giving rise to the Baldwin Administrative Expense Claim." *Id.* Henceforth, the Court will refer simply to the "Administrative Expense Claim" or simply "the Claim," the "Original Suit," and the "Disputes," respectively.

Based on Subparagraph (c)(3)'s provisions, Dahlgren maintains that "(t)he plain language of the Confirmed Dahlgren Plan precludes all of Baldwin's claims, including Baldwin's claim for injunction." Dahlgren's Brief at ¶ 2.3.

The Administrative Expense Claim, however, is not so far-reaching. In it, Baldwin seeks as an administrative expense "any and all claims for relief requested by it in its Complaint (in the Original Suit) *which arose during the pendency of th(e) bankruptcy case ...*" and are allowable under section 503(b)(1)(A) of the Bankruptcy Code. Baldwin's Request for Payment of Administrative Expense at 3 (emphasis added).

It is well settled that a bankruptcy case is pending only until the plan of reorganization is confirmed. *See Landmark Financial Servs. v. Hall,* 918 F.2d 1150, 1154 (4th

---

9. The Court notes that Baldwin's Rule 6(b) motion requests that the Court extend the three year period to six. *See infra* pp. 406–07; Baldwin's Response at 19.

Cir.1990) (referring in *dicta* to "after filing but prior to confirmation"). Wherefore, in this case, the "which arose during the pendency of th(e) bankruptcy case" language plainly confines the Administrative Expense Claim to damages that accrued preconfirmation. As Baldwin notes, Dahlgren ignores this language.

Likewise, the fact that Baldwin's Administrative Expense Claim limits itself to claims allowable under section 503(b)(1)(A) means that it does not seek injunctive relief. A claim for injunctive relief cannot properly rest in section 503(b)(1)(A), which authorizes only claims for "the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case...." 11 U.S.C.A. § 503(b)(1)(A) (West Supp.1992).

■ This language encompasses only claims for financial recovery. First and foremost among such claims are those for debts. The test for debts seeking administrative expense priority requires that the obligation at issue both arise from a transaction involving the claimant and the debtor in possession and result in a direct benefit to the estate. *See Employee Transfer Corp. v. Grigsby (In re White Motor Corp.),* 831 F.2d 106, 110 (6th Cir.1987) (following *Cramer v. Mammoth Mart, Inc. [In re Mammoth Mart, Inc.],* 536 F.2d 950, 954 [1st Cir.1976]); *Berliner Handels-Und Frankfurter Bank v. East Tex. Steel Facilities, Inc. (In re East Tex. Steel Facilities, Inc.),* 117 B.R. 235, 243 (Bankr. N.D.Tex.1990) (doing the same). Notwithstanding Dahlgren's assertions to the contrary, this test is specific to claims based on debts and does not pull claims for injunctive relief within section 503(b)(1)(A)'s reach. For example, the injunctive relief contemplated in the Original Suit, *see infra* p. 403, neither pertains to a debt nor rests on a transaction involving Baldwin and Dahlgren. Instead, it seeks to prohibit transactions between Dahlgren and nonclaimants.

Looking elsewhere, damages for claims that arise during, and are caused by, the reorganized operation of a debtor's business—although not ultimately serving to preserve the estate—also have been held to satisfy section 503(b)(1)(A) on grounds that they are necessary costs and expenses of the estate. *See, e.g., Reading Co. v. Brown,* 391 U.S. 471, 476–81, 88 S.Ct. 1759, 1762–65, 20 L.Ed.2d 751 (1968) (determining that, because the right to recover for financial injury is consistent with the bankruptcy principle of fairness to all claimants, "tort claims arising during an arrangement [are] actual and necessary expenses of the arrangement"); *In re Charlesbank Laundry, Inc.,* 755 F.2d 200, 202–03 (1st Cir. 1985) (affording administrative expense priority to fine imposed for violation of court-imposed injunction); *J. Catton Farms, Inc. v. First Nat'l Bank of Chicago (In re J. Catton Farms, Inc.),* 779 F.2d 1242, 1249 (7th Cir.1985) (stating in *dicta* that damages for breach of contract may qualify for administrative expense priority under section 503[b][1][A]). As the examples cited above illustrate, setting priorities for financial recovery from the estate is the very fiber of section 503(b)(1)(A) and the driving rationale behind the various recoveries authorized thereunder.

■ Claims for injunctive relief do not fit the same bill. They do not constitute costs or expenses of the estate and do not seek damages. *See Doss v. South Cent. Bell Tel. Co.,* 834 F.2d 421, 423–24 (5th Cir.) (distinguishing equitable remedies from damage awards), *reh'g denied,* 837 F.2d 1090 (1987); 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2942 (1973 & Supp.1992) (hereinafter Wright & Miller) (explaining the availability of injunctive relief). Consequently, they must find authorization elsewhere in the Bankruptcy Code.[10] Thus,

---

**10.** Injunctive relief for non-administrative expense claims can be appropriate when a debtor breaches an obligation to perform. The Bankruptcy Code defines "claim" as including a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment...." 11 U.S.C.A. § 101(5) (West Supp.1992). For example, the Supreme Court held in *Johnson v. Home State Bank,* a Chapter 13 reorganization case, that a mortgage lien

while a damages claim based on acts of patent infringement can constitute a section 503(b)(1)(A) administrative expense, *see Carter–Wallace, Inc. v. Davis–Edwards Pharmacal Corp.*, 443 F.2d 867, 874 (2d Cir.1971) (stating as much in *dicta* while under the reign of section 64 of the Bankruptcy Act of 1898, the materially identical predecessor to section 503[b][1][A] [11]), *cert. denied*, 412 U.S. 929, 93 S.Ct. 2753, 37 L.Ed.2d 156 (1973); *see also In re Chicago Pac. Corp.*, 773 F.2d 909, 914 n. 6 (7th Cir.1985) (summarizing *Carter–Wallace, Inc.*), the same is not true of a claim for injunctive relief based on the same acts.

■ Furthermore, after confirmation, unless otherwise specified in the plan of reorganization, "the estate ceases to exist." *In re NTG Indus., Inc.*, 118 Bankr. 606, 610 (Bankr.N.D.Ill.1990); *see* 11 U.S.C.A. § 1141(b) (West 1979). As a result, there can be no section 503(b)(1)(A) administrative expense claims after confirmation because there is no estate to preserve. Similarly, in this case, the Plan, itself, does not authorize post-confirmation administrative expense claims. Rather, in addition to im-

posing the aforementioned three year statute of limitations equivalent, it specifies how Baldwin's administrative expense claim, which arose pre-confirmation, will be satisfied after confirmation.[12]

Based on the foregoing, the Court concludes that Baldwin's Administrative Expense Claim seeks only pre-confirmation money damages and that the Plan treats the Administrative Expense Claim in a manner consistent with that conclusion.

■ The claims of the Original Suit are broader. The complaint seeks money damages for ongoing acts of infringement, as well as preliminary and permanent injunctive relief, attorney's fees and costs.[13] *See* Complaint, filed October 27, 1988, at 3. Nevertheless, the pre-confirmation portion of the Original Suit's claims duplicates Baldwin's Administrative Expense Claim and, accordingly, is subject to the same fate.[14]

What remains of the Original Suit—and this suit—therefore, are claims for post-confirmation money damages and injunctive relief.[15] These claims raise the specter

qualified as claim against the debtor, in part, because "the creditor's right to foreclose on the mortgage can be viewed as a 'right to an equitable remedy' for the debtor's default on the underlying obligation." — U.S. ——, ——, 111 S.Ct. 2150, 2153–56, 115 L.Ed.2d 66 (1991). Equitable measures also can emerge from section 105(a), which affords the bankruptcy court broad powers to enforce and implement other provisions of the Bankruptcy Code, as well as its own orders. *See* 11 U.S.C.A. § 105(a) (West Supp.1992).

**11.** In so saying, the Second Circuit in *Carter–Wallace, Inc.* links the Supreme Court's justification for qualifying tort damages as administrative expenses in *Reading Co. v. Brown, see supra* p. 402, with the Federal Circuit's treatment of patent infringement as a continuing tort. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1031 (Fed.Cir.1992); *infra* note 16.

**12.** As noted, it creates an escrow to that end. *See supra* pp. 400–01; Plan at ¶ 6.01.2(c)(4).

**13.** Baldwin's Administrative Expense Claim for pre-confirmation damages, therefore, constitutes a subset of the claims asserted in the Original Suit. The parties' Joint Status Report, filed June 15, 1989 ("JSR"), concedes the distinction between the Administrative Expense Claim and the Original Suit, noting that the

Claim is only "related to" the Original Suit. JSR at 5. Understanding that the Administrative Expense Claim and Original Suit were consolidated in a manner different from that outlined in the Plan, *see supra* p. 397 and note 4, this analysis is consistent with the theme of Paragraph 6.01.2. Subparagraph (c) calls for the district court to resolve all claims for post-petition money damages. Subparagraphs (c)(1) and (3) make it clear that the bankruptcy court then will await the district court's determination before ruling on whether to allow Baldwin's Administrative Expense Claim for pre-confirmation damages.

**14.** Also, confirmation of a plan of reorganization precludes all unaddressed pre-confirmation claims of those with notice of the plan and the proceedings related thereto. *See* 11 U.S.C.A. § 1141(a) (West Supp.1992); Rule 3020(b), Fed. R.Bankr.; *Republic Supply Co. v. Shoaf*, 815 F.2d at 1050. The Original Suit's pre-confirmation claims would be such claims.

**15.** The claims for injunctive relief remain, in part, because the infringement claims allege continuing infringement. *See* Complaint at 2–3. Dahlgren admits the same, stating that, "(w)hat is clear is that Baldwin, at confirmation, contended that Dahlgren was infringing and that Baldwin was entitled to injunctive relief and damages." Dahlgren's Reply at 5.

of the second Subparagraph (c)(3) relief, which proclaims that "Baldwin shall no longer seek or assert any claim for *post-petition money damages based upon (the) Disputes* against (Dahlgren)." Plan at ¶ 6.01.2(c)(3) (emphasis added).

This language is clear. Unless defined otherwise by the parties, "post-petition" refers to a definite and finite period that begins once the petition for Chapter 11 relief has been filed and ends when a plan of reorganization is confirmed; the plain meaning of "post-petition" does not encompass a post-confirmation time frame.

This is the only interpretation consistent with fundamental bankruptcy law. The act of plan confirmation is, perhaps, the major event in a Chapter 11 proceeding. At that point, the debtor receives an unencumbered fresh start, being discharged of pre-confirmation debts and vested with all property of the estate to the extent specified in Title 11, United States Code, Section 1141.

Indeed, courts often refer to "post-petition" and "post-confirmation" as separate time frames. *See, e.g., In re Fullmer,* 962 F.2d 1463, 1466 n. 4 (10th Cir.1992) (stating that, "[t]he tax claims at issue here included debts that arose prepetition, postpetition, and post-confirmation"); *Service Decorating Co. v. Travelers Ins. Co. (In re Serv. Decorating Co.),* 105 B.R. 859, 860, 862 (N.D.Ill.1989) (using "post-petition" and "pre-confirmation" as synonyms and in contrast to "post-confirmation"); *In re Rankin,* 141 B.R. 315, 318 (Bankr. W.D.Tex.1992) (also differentiating the term "post-confirmation" from the synonyms, "post-petition" and "pre-confirmation"); *In re Bereolos,* 126 Bankr. 313, 327 (Bankr.N.D.Ind.1990) (discussing the impact of a debtor failing to cure arrears "either pre or post petition or post confirmation"). Likewise, matters that are, by definition, limited to the pre-confirmation

time frame, routinely are alluded to as "post-petition" matters. *See, e.g., In re Fullmer,* 962 F.2d at 1468 n. 4 (explaining that, "11 U.S.C. § 503 ... defines administrative expenses as 'including' post-petition taxes"); *Loethen Oil Co. v. Hen House Interstate, Inc. (In re Hen House Interstate, Inc.),* 136 B.R. 220, 221 n. 6 (Bankr. E.D.Mo.1992) (highlighting that Section 503(b)(1)(A)'s definition of administrative expense claims "defines post-petition claims"); *see generally* B. Weintraub and A. Resnick, Bankruptcy Law Manual § 5.07 (1985) (discussing post-petition claims and noting relevant developments that occur "[d]uring the pendency of the bankruptcy case").

In addition, given that the Disputes are defined in the Plan as those that gave rise to Baldwin's Administrative Expense Claim and that the same claim seeks pre-confirmation damages, the second relief, read precisely, pertains only to claims based on the disputes that gave rise to Baldwin's claims for pre-confirmation damages. In that sense, the language of the second relief confirms itself, leaving no room for any conclusion other than that the Disputes arose pre-confirmation by definition. Thus, based on the language of Paragraph 6.01.2, the Disputes are not linked to the patent infringement claims arising post-confirmation.[16]

Equally clear in the second Subparagraph (c)(3) relief language is its inapplicability to Baldwin's claims for injunctive relief. The reference to "any claim for post-petition money damages" is specific to the point that it excludes claims for injunctive relief. An injunction is an equitable remedy and not considered damages. *See supra* pp. 402–03. Consequently, the Plan does not affect Baldwin's claim for injunctive relief.

---

**16.** Patent law provides that each act of patent infringement constitutes a separate cause of action. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d at 1031 (treating patent infringement as a continuing tort); *Shields v. Halliburton Co.,* 493 F.Supp. 1376, 1381 (W.D.La.1980), *aff'd,* 667 F.2d 1232 (1982); *supra* note 11; *see also* 35 U.S.C.A. § 271(a) (West 1984) (setting forth the basic infringement causes of action). Therefore, with respect to this case, alleged acts of infringement that occur post-confirmation are separate causes of action from those that occur pre-confirmation, and the former necessarily give rise only to post-confirmation claims.

These conclusions harmonize the remaining Paragraph 6.01.2 provisions, *see Gibson Drilling Co. v. B & N Petroleum, Inc.,* 703 S.W.2d 822 (Tex.App.—Tyler 1986, writ ref'd n.r.e.) (citation omitted), allowing them, as well as the remainder of the Plan, to be effective and enforceable. *See R & P Enters. v. LaGuanta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 519 (Tex.1980); *Woods v. Sims,* 154 Tex. 59, 273 S.W.2d 617, 620–21 (1955). The subject of the paragraph is Baldwin's Administrative Expense Claim and not the Original Suit. The paragraph is styled, *"The Disputed Baldwin Claim"*; the first sentence states that, "(t)he Request for Payment of Administrative Expense filed by Baldwin in this case on February 9, 1989 (the Baldwin Administrative Expense Claim) is vigorously disputed and contested by DII"; and, the remaining subparagraphs are introduced as provisions of the "Agreed Order Pertaining to the Baldwin Administrative Expense Claim...."

The Original Suit comes into play in subparagraph (c). There, the parties agree that reference on the Administrative Expense Claim will be withdrawn and that the Claim will be consolidated into the Original Suit and resolved therein. This provision, however, does not shift the focus of Paragraph 6.01.2 from the Administrative Expense Claim to the Original Suit. On the contrary, the paragraph defers bankruptcy court action on the Administrative Expense Claim until the district court has ruled on the same claim as a part of the Original Suit. The remaining paragraph provisions discuss the agreement the parties reached with respect to how final judgment (or lack thereof) in the district court would affect allowance or disallowance of the Administrative Expense Claim in bankruptcy court.[17] No provision in the paragraph attempts to dictate the fate of the Original Suit, itself.

The third Subparagraph (c)(3) relief is straightforward, requiring that the Baldwin Administrative Expense Escrow be paid over to Dahlgren.

Finally, the Court concludes that the sole reasonable interpretation of the Subparagraph (c)(3) relief language, taken as a whole, is that it bars only the pre-confirmation patent infringement money damages claims between Baldwin and Dahlgren in this suit. In this respect, it is significant that the first two prongs of the relief are presented together. Read together, they state, in effect, that the Administrative Expense Claim and any claims based on the disputes underlying it are dismissed with prejudice; the relief language cannot reasonably be read to suddenly reach out to previously unmentioned claims in the Original Suit.

*Enforceability of the Plan Provision*

■ Baldwin next intimates that Subparagraph (c)(3) should not be enforced because "the inability to try this case within three years was due to circumstances beyond Baldwin's control." Baldwin's Brief in Response at 3; *see also* Baldwin's Motion Pursuant to Fed.R.Civ.P. 6(b), filed May 15, 1992, at 12 (stressing that, "the three (3) year period lapsed due to no fault of Baldwin").

This argument is no reason to ignore the Plan, even with its ban limited to pre-confirmation money damages. Baldwin agreed to the three year provision, by all indications bargaining freely in the contractual process. There is no flaw in the Plan as a contract. Both parties actually contend that it is unambiguous. *See* Dahlgren's supporting Brief at ¶¶ 2.3, 2.16; Baldwin's Brief in Response at 8; Baldwin's Reply to the Motion to Strike Affidavit of Wayna Marshall at 1–2.

The fact that Baldwin subjected itself to circumstances beyond its control is neither unique nor dispositive. Baldwin made no mention to the Court of the Subparagraph (c)(3) three year period during its running. Neither did Baldwin notify the Court in its motion seeking mandatory withdrawal of reference of the Administrative Expense Claim that the three year period was contemplated, despite the fact that the motion

---

**17.** As recounted herein, the procedural evolution of this case did not follow the subparagraph (c) script. *See supra* notes 4 and 6.

was filed before the Plan was submitted to the bankruptcy court. Moreover, when the Plan was confirmed, before the Court withdrew reference on the Administrative Expense Claim, Baldwin did not inform the Court that it would be working in the shadow of the self-imposed statute of limitations should it withdraw reference on the claim.[18] In fact, the Court was not aware of the three year period until Dahlgren filed its Motion for Leave to File Motion to Enter Judgment on May 14, 1992, two days after the period had expired.

*Baldwin's Rule 6(b) Motion for Extension*

 Lastly, Baldwin moves pursuant to Rule 6(b), Fed.R.Civ.P., to extend the Subparagraph (c)(3) period from three to six years even as it applies only to claims for pre-confirmation money damages. Because the Court enforces Paragraph 6.01.2, including Subparagraph (c)(3), as a contractual provision, Rule 6(b) is not applicable. Even if Rule 6(b) were applicable here, Baldwin is ineligible for its relief.

 Rule 6(b) provides that,

when by these rules or by a notice given thereunder or by order of the court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect....[19]

A tardy Rule 6(b) movant bears the burden of establishing excusable neglect. *See Bernhardt v. Richardson–Merrell, Inc.*, 892 F.2d 440, 444 (5th Cir.1990); *Farina v. Mission Inv. Trust*, 615 F.2d 1068, 1076 (5th Cir.1980). Inadvertence or mistake of counsel or ignorance of the rules usually

will not constitute excusable neglect. *See United States v. O'Neil*, 709 F.2d 361, 373–74 (1983) (discussing excusable neglect under Fed.R.Civ.P. 60[b]); *see also McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1387 (11th Cir.1981) (discussing other acts of neglect that fall short of Rule 6[b][2]'s demands), *cert. denied*, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982); 4A Wright & Miller § 1165 (expounding on the same Rule 6[b][2] principles).

In this case, Baldwin's motion came after the three year period had expired, and there is neither good cause shown nor excusable neglect. While the three year provision is decidedly unique—this Court has not seen its like—the parties agreed to it freely, and the fact that circumstances beyond Baldwin's control could prevent its obtaining final judgment on the pertinent post-petition (pre-confirmation) money damages claims within three years was obvious.

Baldwin also volunteers that it was so certain that the Subparagraph (c)(3) three year period did not apply as Dahlgren had suggested that it chose not to move for an extension prior to May 12, 1992.[20] *See* Baldwin's Motion Pursuant to Fed.R.Civ.P. 6(b) at 3. This maneuvering falls short of that recognizable under Rule 6(b) and weighs against Baldwin in its effort to acquire an extension on the three year period after it had expired.

Baldwin's Motion Pursuant to Fed. R.Civ.P. 6(b) is DENIED.

### III. Conclusion

Dahlgren's May 18, 1992, Motion to Enter Judgment Disallowing the Administrative Expense Claim of Baldwin Technology Corporation Against Dahlgren and Grant-

---

**18.** Again, a statute of limitations analogy is apropos. Some limitations periods are absolute, commencing on the appointed days regardless of the circumstances. *See, e.g.*, Tex.Rev.Civ. Stat.Ann. art. 4590i, § 10.01 (West Supp.1992) (allowing no discovery rule in Medical Liability Act cases); *see also Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985) (explaining same). The parties contracted for such a period in this case, and there is no justification for what would amount to equitable tolling.

**19.** The corresponding bankruptcy rule is identical in every meaningful respect. *See* Fed. R.Bankr. 9006(b).

**20.** This rationale is curious in that the standard for extensions requested *prior* to the expiration of a court-imposed time period is more lenient. *See* Fed.R.Civ.P. 6(b); *see also* 4A Wright & Miller § 1165 (emphasizing that timely motions need show only good cause and that others need show both good cause and excusable neglect).

ing Related Relief is GRANTED to the following extent:

Baldwin's Administrative Expense Claim is DISALLOWED.

Baldwin's claims for post-confirmation money damages, injunctive relief, and attorney's fees are the subject of a separate opinion and order.

The Court's June 22, 1992, Memorandum Opinion and Order is VACATED. This Memorandum Opinion and Order is entered in its place to be effective June 22, 1992, *nunc pro tunc.*

SO ORDERED.