In re DAHLGREN INTERNATIONAL, INC., Debtor,

**BALDWIN TECHNOLOGY CORPORATION,**
**Plaintiff**

**v.**

**DAHLGREN INTERNATIONAL, INC., Defendant**

Civ. No. 3:89–CV–0501–H.

United States District Court, N.D. Texas, Dallas Division.

Oct. 29, 1992.

---

William B. Steele, III, Susan L. Karamanian, Locke Purnell Rain Harrell, Dallas, TX, and Warren H. Rotert and Vincent A. Castiglione, Morgan & Finnegan, New York City, for plaintiff.

Donald C. Templin and Phillip B. Philbin, Haynes & Boone, Dallas, TX, for defendant.

## MEMORANDUM OPINION
## AND ORDER

SANDERS, Chief Judge.

The Court has before it the following: Plaintiff Baldwin's Memorandum in Support of its Application for Attorneys' Fees, and the Affidavit of Warren Rotert, both filed August 13, 1992; and Defendant Dahlgren's Objections, filed August 19, 1992.

## I. BACKGROUND

This case was tried before the Court in a non-jury trial on July 20–23, 1992. The Court found that Dahlgren had willfully infringed Baldwin's dampening system patent and that Baldwin was therefore entitled to treble damages and attorneys' fees. *See* Findings of Fact and Conclusions of Law, filed August 7, 1992, at 18, 20–21 ("Findings and Conclusions"). Damages in the amount of $361,334.46, plus prejudgment interest, were awarded on October 15, 1992. *See* Memorandum Opinion and Order, filed October 15, 1992. Baldwin now requests $1,160,799.50 in fees and disbursements.

## II. ANALYSIS

A. "Exceptional" nature of the case

■ Baldwin requests its fees and expenses pursuant to 35 U.S.C. § 285 which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." As a threshold matter, before an award of fees is justified under the statute, a court must find that the case is "exceptional." Here, this finding has already been made. In its August 7 Findings and Conclusions, the Court found that "[p]ursuant to 35 U.S.C. § 285, Plaintiff Baldwin is entitled to an award of reasonable attorneys' fees." *See* Findings and Conclusions at 21, Conclusion No. 15. Implicit in this statement is the finding that the case is exceptional.

Such a finding is justified in light of the willfulness of Dahlgren's infringement, which the Court held to have been proven by clear and convincing evidence. *See* Findings and Conclusions at 18, Conclusion Nos. 8–9; *see also Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1329 (Fed.Cir.1987) ("finding of willful infringement is legally sufficient to meet the criterion of 'exceptional case', and in such a case it is within the court's discretionary authority to award attorney fees.").

### B. Bankruptcy related matters

Dahlgren first objects to Baldwin's request for $28,362.50 [1] in fees for services rendered prior to May 12, 1989, the date the bankruptcy court confirmed Dahlgren's Second Amended Plan of Reorganization. Dahlgren also objects to the inclusion of pre-confirmation disbursements.[2] *See* Dahlgren's Objection at 2, No. 1.2. In a previous opinion, the Court ruled that Baldwin is not entitled to damages arising from infringement which occurred before the bankruptcy court's confirmation. *See* Memorandum Opinion and Order, filed August 7, 1992, at 10–20, 147 B.R. 393, 401. Accordingly, the Court sustains Dahlgren's Objection 1.2. Baldwin's Application for the $28,362.50 in fees and $343.90 in disbursements arising prior to confirmation is DENIED.

Dahlgren's Objection 1.3 takes issue with Baldwin's claim for $14,566.75 in attorney time spent reviewing bankruptcy-related issues. For the reason given above, the Court will not allow the recovery of this amount. Baldwin's Application for $14,566.75 in fees for reviewing bankruptcy matters is DENIED.

### C. Fees

The objections numbered 1.4 and 1.5 relate to the reasonableness of Baldwin's fees. The determination as to the reasonableness of attorney fees is governed by the Fifth Circuit's opinions in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974),[3] and *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087 (5th Cir.1982).[4]

■ Dahlgren first argues that counsel for Baldwin spent an excessive amount of time in the preparation of certain motions and in trial preparation. Baldwin has provided the Court with detailed documentation of the time spent by each member of its litigation team, and the amounts billed for that time. *See* Affidavit of Warren Rotert and Exhibits A–H thereto. In spite of Dahlgren's objections, the Court cannot say that the hours spent were disproportionate to the tasks at hand. This case involved complex issues in the specialized

---

1. This figure is taken from Exhibit F to the Affidavit of Warren Rotert, which is an itemization of all fees requested. The first six items listed in Exhibit F have statement dates prior to May 12, 1989 and total $28,363.50.

2. Dahlgren asks the Court to disallow $227.40, referring to Exhibit G to the Affidavit of Warren Rotert. Exhibit G, which is an itemization of disbursements, shows the first six items to have pre-confirmation statement dates. These items total $343.90. The Court will use the $343.90 figure.

3. *Johnson* lists twelve factors which the district court should take into account when assessing an application for fees: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circum-

stances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717–19.

4. *Copper Liquor* refines the *Johnson* analysis by fitting the twelve factors into a three-step framework. The district court is to first "[a]scertain the nature and extent of the services supplied by the attorney ..." and second, to "[v]alue the services according to the customary fee and quality of the legal work...." *Copper Liquor*, 684 F.2d at 1092. In doing so, the court should focus on four of the factors, namely the time and labor involved, the customary fee, the amount involved and results obtained, and the experience, reputation and ability of counsel. The third step is to "[a]djust the compensation on the basis of the other *Johnson* factors that may be of significance in the particular case." *Id.*

area of patent law, and demanded the acquisition of engineering and other scientific knowledge on the part of the attorneys. *See* Affidavit of Warren Rotert at 22. As such, the Court finds that the hours spent in preparation, as detailed by Baldwin, were reasonable considering the complex and specialized nature of this case.

Furthermore, the hourly rates charged were in accordance with rates customarily set for comparable work in the relevant legal markets. Baldwin has provided the Court with a table comparing the rates charged by the firms involved in this case with the prevailing rates in New York and Dallas according to the American Intellectual Property Law Association. *See* Table A, Plaintiff's Memorandum at 9. The Fifth Circuit has recognized the American Intellectual Property Law Association as a valid source in assessing the customary fee in patent cases. *See Mathis v. Spears*, 857 F.2d 749, 755–56 (Fed.Cir.1988). A look at the table shows that the rates demanded by Locke Purnell Rain Harrell in Dallas and Morgan & Finnegan in New York are commensurate with the rates prevailing in those cities.

Dahlgren does not directly challenge the rates, but rather asserts that some of the work performed by partners or senior associates could have been done by associates or paralegals at lower rates. Again, in view of the specialized nature of the litigation, the Court cannot agree. In a case such as this, it may well have been more efficient to have Mr. Rotert, an experienced patent attorney, perform much of the work.

■ The fees requested are not disproportionate to the results obtained in this suit. Although the amount of money damages awarded, $361,334.46 plus prejudgment interest, is significantly less than the fee request, this does not take into account the value of the injunction won by Baldwin. As a result of the suit, both Dahlgren and Dahlgren USA are "enjoined from all acts of further infringement of the '764 patent." Findings and Conclusions at 21, Conclusion 14. The value of this injunction is demonstrated by the amount Baldwin has re-

ceived in royalties on the patent under a licensing agreement it has with the Epic company. Since 1988, Baldwin has already received approximately $1.4 million under the agreement, and expects to receive $4 million before it expires in the year 2005. Affidavit of Warren Rotert at 26. When viewed from this perspective, the fees are reasonable.

The Court also finds Baldwin's requested fees and expenses to be commensurate with awards in similar cases. *See Johnson*, 488 F.2d at 719. Patent cases frequently result in large awards of attorney fees. *See, e.g., Howes v. Medical Components, Inc.*, 761 F.Supp. 1193, 1202 (E.D.Pa.1990) ($1,949,448.49 awarded in fees and expenses); *IVAC Corp. v. Terumo Corp.*, 1990 U.S.Dist.LEXIS 19856, 18 U.S.P.Q.2d 1637 (S.D.Ca.1990) ($1,598,607 awarded in fees and expenses); *Beckman Instruments, Inc. v. LKB Produkter AB*, 1990 U.S.Dist.LEXIS 18494, 17 U.S.P.Q.2d 1190 (D.Md.1990), *aff'd*, 930 F.2d 37 (Fed. Cir.1991) ($1,130,580.85 awarded in fees, expenses and prejudgment interest).

The remainder of the *Johnson* factors are not relevant. The Court finds that the hours worked and the rates charged were reasonable in light of the circumstances of this case and that no adjustment is necessary, beyond the disallowance of the charges for bankruptcy-related matters. Dahlgren's Objections numbered 1.4 and 1.5 are accordingly OVERRULED.

**D. Disbursements**

■ Objections 1.6 and 1.7 ask the Court to disallow certain of Baldwin's claimed disbursements. Dahlgren argues that Baldwin is not entitled to recoup "non-statutory" costs such as copying costs and long distance calls, among other things. However, the Fifth Circuit has held that 35 U.S.C. § 285 contemplates recovery of "sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed.Cir.1983). After reviewing the expenses submitted by Baldwin, the Court finds that they were reason-

ably incurred during the three-year course of this litigation. Objections 1.6 and 1.7 are thus OVERRULED. The Court notes, however, that some of the expenses listed here may also be recoverable as statutory costs. Any expenses recovered here will not later be included in a Bill of Costs.

## III. CONCLUSION

The total amount requested in attorneys' fees is $952,935.45. After subtracting the amounts disallowed above, ($28,362.50 for pre-confirmation expenditures and $14,-566.75 for time spent reviewing bankruptcy matters,) the total in attorneys' fees comes to $910,006.20.

The total amount requested for expenses is $207,864.05. After subtracting the amount disallowed above, ($343.90 for pre-confirmation expenses,) the total in expenses comes to $207,520.15.

Baldwin's application for attorneys' fees and expenses is GRANTED with the exceptions enumerated above. Baldwin's request for pre-judgment interest is DENIED.

SO ORDERED.